1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PATRICIA WEEKS, et al.,

  Plaintiffs,

  v.

GOOGLE LLC,

  Defendant.

Case No. 18-cv-00801 NC

**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS AND GRANTING LEAVE TO AMEND**

Re: Dkt. No. 42

In the age of smartphones, many consumers expect not only to be able to place and receive calls on their devices, but also to be able to verbally give commands to their phones. This lawsuit is about the alleged failure of a smartphone, the Google Pixel, to deliver on either of these functions. In this product defect lawsuit, plaintiffs Patricia Weeks, Alicia Helms, and Brian McCloy allege that the Pixel has a microphone defect that caused the phone to fail to place and receive calls. This, plaintiffs allege, rendered their phones unfit for their usual purpose.

Defendant Google LLC warranted the Pixels under a Limited Warranty for one year, and gave Google, in its sole discretion, the power to repair, replace, or provide a refund for defective Pixels. Plaintiffs took advantage of the Limited Warranty, but instead of refunds or repairs, plaintiffs allege that Google would only provide them with equally defective replacement Pixels. These replacement Pixels allegedly also suffered from the microphone defect that plaintiffs' original phones had. Plaintiffs bring this consumer class

action seeking damages, declaratory judgment, and injunctive relief requiring Google to disclose the defect. Google moves to dismiss plaintiffs' amended complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the Court GRANTS IN PART and DENIES IN PART Google's motion to dismiss. The warranty-based claims are dismissed, but the claims for (1) breach of the covenant of good faith and fair dealing, (2) the California Consumer Legal Remedies Act, (3) the California Unfair Competition Law, and (4) fraudulent concealment survive this motion. The Court GRANTS plaintiffs LEAVE TO AMEND their complaint consistent with this order.

## I. BACKGROUND

Weeks, Helms and McCloy are citizens of the states of Florida, North Carolina, and Illinois, respectively. Dkt. No. 26 at 2. Defendant Google LLC is incorporated in Delaware, but has its principal place of business in Mountain View, California, within this judicial district. *Id.* Plaintiffs seek to represent a nationwide class of Pixel purchasers. The Pixel was released by Google on October 20, 2016. *Id.* at 9. All named plaintiffs purchased their devices directly from Google, or from an authorized seller of the Pixel. *Id.* at 10. The Pixel was sold at prices ranging from $649 to $869 a unit. *Id.* at 2.

When buying the phones, plaintiffs all were required to agree to the terms of purchase and warranties presented by Google, which plaintiffs were not given an opportunity to negotiate. *Id.* at 4, 6, 7. Moreover, plaintiffs assert that they were unaware prior to purchase that Google had placed "any disclaimer of or limit on warranty coverage" of the Pixels. *Id.* The Limited Warranty in question states in relevant part that: "Google warrants that a new Phone . . . will be free from defects in materials and workmanship under normal use in accordance with Google's published user documentation for one year from the date of original retail purchase in its original packaging by you." Dkt. No. 43-1 at 4 (Google "Hardware Warranty Center"). The "Limited Warranty does not guarantee that use of the Phone will be uninterrupted or error free." *Id.* As to the section of the warranty dealing with remedies, the warranty provides:

**EXCLUSIVE REMEDY:** If a defect arises and you return your Phone during the Limited Warranty period (which is one year for new devices and ninety days for refurbished devices), Google will in its sole discretion and to the extent permitted by law either repair your Phone using new or refurbished parts, replace your Phone with a new or refurbished Phone functionally at least equivalent to yours, or accept the return of the Phone in exchange for a refund of the purchase price you paid for the Phone. If Google repairs or replaces the Phone, the repaired or replaced Phone will continue to be warranted for the remaining time of the original warranty period.

. . .

THE LIMITED WARRANTY WRITTEN ABOVE IS THE ONLY EXPRESS WARRANTY GOOGLE PROVIDES FOR THE PHONE, AND THE ABOVE REMEDY IS YOUR SOLE REMEDY.

*Id.* at 4-5 (bolding and all caps in original), 8-9 (same).

Plaintiffs purchased their Pixels between November 2016 and February 2017, and all of their phones exhibited the alleged microphone defect within one year of purchase. Dkt. No. 26. at 3-8. Per plaintiffs, despite Google's knowledge of the microphone defect (based on customer complaints on Google's customer service forum), Google at no time warned them of the defect prior to purchase. *Id.* at 12, 20.

Each plaintiff states that had he or she known about the microphone defect, he or she would (1) not have purchased the Pixel, (2) not have purchased it at the price he or she did, or (3) have returned the Pixel during the buyer's remorse period. *Id.* at 4, 6-7, 8. Also, plaintiffs represent that they "would like to buy more Google mobile phone products, [but] they will not do so unless Google takes sufficient steps to cure the microphone defect and ensure the accuracy of its representations about its Pixel product line."[1] *Id.* at 8.

Plaintiffs filed this case on February 6, 2018. Dkt. No. 1. The operative amended complaint alleges claims for: (1) breach of express warranty; (2) breach of the implied covenant of good faith and fair dealing; (3) breach of the implied warranty of merchantability; (4) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et*

---

[1] There are facts in the Amended Complaint regarding the microphone defect and specific consumer complaints regarding the Pixel. For purposes of this motion, however, the Court does not recount them because they do not bear on the outcome. The interested reader may refer to the amended complaint for additional background. Dkt. No. 26.

1  *seq.*; (5) violation of California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code

2  § 17200; (6) violation of California's Consumer Legal Remedies Act (CLRA), Cal. Civ.

3  Code § 1750, *et seq.*; and (7) fraudulent concealment. Dkt. No. 26. Plaintiffs sue under

4  California law because Google's Terms of Sale for Devices requires that California law

5  apply to any disputes.[2] *Id.* at 22. Google filed this motion to dismiss the entire complaint,

6  and plaintiffs oppose the motion. Dkt. Nos. 42, 51.

7  All parties consented to the jurisdiction of a magistrate judge under 28 U.S.C. §

8  636(c). Dkt. Nos. 12, 22, 59, 60.

9  **II. LEGAL STANDARD**

10  A motion to dismiss for failure to state a claim under Rule 12(b)(6) tests the legal

11  sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). On a

12  motion to dismiss, all allegations of material fact are taken as true and construed in the

13  light most favorable to the non-movant. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-

14  38 (9th Cir. 1996). The Court, however, need not accept as true "allegations that are

15  merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re*

16  

17  [2] As a result, it does not appear that the Court needs to face thorny choice of law concerns,
   as another court in this district did in a similar case, *In re Nexus Products Liability*

18  *Litigation*, 293 F. Supp. 3d 888 (N.D. Cal. 2018). However, the Court alerts the parties to
   the analysis in *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014), in which

19  District Court Judge William H. Orrick considered the plaintiff's omission of allegations
   regarding the terms of use in the complaint's venue allegations as part of his analysis in

20  dismissing the class and individual claims. Judge Orrick gave the plaintiff leave to amend
   in that case, and here the Court will too. *Id.* at 1010. Plaintiffs must amend their

21  jurisdictional and venue allegations to make clear that the terms of use are the reason why
   this case may remain in this district. Moreover, the Court warns plaintiffs that it is

22  possible that the Court will be required to dismiss the California consumer protection
   claims against Google. *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,

23  903 F. Supp. 2d 942, 964 (S.D. Cal. 2012) ("Plaintiffs contend that the choice of law
   provision in the SNE Terms of Service Agreement dictates that California law applies to

24  claims relating to their PSN accounts. By its own terms, however, the provision dictates
   only that California law applies to the construction and interpretation of the contract, and

25  thus the provision does not apply to Plaintiffs' non-contractual claims asserted under
   California's consumer protection statutes. . . . [T]he Court DISMISSES Plaintiffs' claims

26  arising under the UCL, FAL, and the CLRA, with respect to the nonresident named
   Plaintiffs with prejudice."). The Court will no doubt revisit this issue in a future motion to

27  dismiss, motion for summary judgment, or motion for class certification. However, the
   Court lacks information to make a decision on this point now because the issue is not

28  briefed, and the Court lacks the benefit of the parties' analysis of the Google Store's Terms
   of Sale for Devices.

*Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Although a complaint need not allege detailed factual allegations, it must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

If a court grants a motion to dismiss, leave to amend should be granted unless the pleading could not possibly be cured by the allegation of other facts. *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000).

## III. DISCUSSION

Google moves to dismiss the amended complaint in its entirety, and plaintiffs oppose the motion. The Court will go through Google's arguments one by one.

### A. The Breach of Express Warranty Claim is Dismissed.

Google moves to dismiss plaintiffs' express warranty claim because it asserts that it fulfilled its obligations under the Limited Warranty by replacing the Pixels with other functionally-equivalent Pixels. Dkt. No. 42 at 12. Moreover, Google argues, to the extent that plaintiffs seek to invalidate the Limited Warranty as being unconscionable, plaintiffs do not provide sufficient facts to demonstrate unconscionability. *Id.* at 14.

Plaintiffs do not challenge the existence of an express warranty, nor do they challenge what it says. Instead, plaintiffs apply *different* language from the Limited Warranty in arguing that Google breached the express warranty. Specifically, plaintiffs assert Google breached provision that guaranteed that the Pixel "will be free from defects in materials and workmanship under normal use[.]" Dkt. No. 51 at 17 (citing Dkt. No. 43-1 at 4). Therefore, plaintiffs' position is that Google breached the Limited Warranty by selling the defective Pixels, and then replacing them with equally defective Pixels. *Id.*

California Commercial Code § 2313(1)(a) explains that the term "express warranty" covers "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that

the goods shall conform to the affirmation or promise." Such warranties apply to "transactions in goods." *See* Cal. Comm. Code § 2102; *see also* Cal. Civ. Code § 1791.2(a)(1) (defining "express warranty" as "[a] written statement arising out of a sale to the consumer of a consumer good pursuant to which the manufacturer, distributor, or retailer undertakes to preserve or maintain the utility or performance of the consumer good or to provide compensation if there is a failure in utility or performance"). "An express warranty is a term of the parties' contract." *Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 978 (C.D. Cal. 2014) (citing *A.A. Baxter Corp. v. Colt Industries, Inc.*, 10 Cal. App. 3d 144, 153 (1970)).

"To state a claim for breach of express warranty under California law, a plaintiff must allege (1) the exact terms of the warranty; (2) reasonable reliance thereon; and (3) a breach of warranty which proximately caused plaintiff's injury." *Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810, 817 (N.D. Cal. 2014) (citing *Williams v. Beechnut Nutrition Corp.*, 185 Cal. App. 3d 135, 142 (1986)). "To allege facts identifying the exact terms of the warranty, a plaintiff must provide 'specifics' about what the warranty statement was, and how and when it was breached." *T & M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855, 875 (N.D. Cal. 2015) (quoting *Minkler*, 65 F. Supp. 3d at 816–17).

There is much bluster in the papers, and it takes some unpacking to decipher what the parties' actual positions on this claim are. Plaintiffs' position is that Google breached the express warranty because the Limited Warranty guaranteed the Pixel would be free from defects. Therefore, in the event that the phone failed, the replacement that plaintiffs received should have been likewise defect-free. The Court notes that it is not plaintiffs'

position that Google did not offer them a remedy in the Limited Warranty.[3]  Instead, plaintiffs argue that the Limited Warranty was breached because both the original Pixels and the replacement Pixels contained defective microphones.  In contrast, Google argues that while the Limited Warranty guaranteed a defect-free phone, Google also warned in the Limited Warranty that it did not guarantee that the Pixels' use would be uninterrupted or error-free.  Moreover, the Limited Warranty provides that in the event that a defect arises, the sole remedy is to repair, replace, or refund, and Google claims to have fulfilled its end of the bargain.  Google provided plaintiffs with "functionally-equivalent phones," which allegedly manifested the same defect.  *See* Dkt. Nos. 48-1 at 4-5; 54 at 7.

### 1.  "Defect-Free Phone" vs. Use Not "Uninterrupted or Error-Free"

The first question the Court must answer is whether a breach of express warranty claim may be premised on language in the warranty that states that a product will be "defect-free."

Plaintiffs argue their express warranty claim survives because "an express warranty is breached when a product contains an inherent defect which is substantially certain to result in malfunction during the useful life of the product." Dkt. No. 51 at 18 (citing *Hicks v. Kaufman & Broad Home Corp.*, 89 Cal. App. 4th 908, 923 (2001) and *Hewlett-Packard Co. v. Superior Court*, 167 Cal. App. 4th 87, 95 (2008)).  In essence, this argument goes to whether it is actionable to sue under an express warranty theory just because a product is

---

[3] This may seem counterintuitive because plaintiffs allege in different parts of the amended complaint facts that would appear to contradict this finding.  For example, plaintiff Weeks alleges she "asked Google for her money back or for a new, non-defective replacement [but] Google refused, [and that a]s a result of the microphone defect and Google's failure to provide warranty service, Dr. Weeks no longer uses her Pixel and instead uses a replacement phone." Dkt. No. 26 at 4.  Similarly, plaintiff Helms accepted a replacement phone that also proved to be defective, and claims that she "called Google about the problem[, and a]fter another round of unsuccessful troubleshooting of the defective replacement, Google refused to offer Ms. Helms further warranty support."  *Id.* at 6.  What all of these allegations have in common is that at no point do plaintiffs allege that Google did not continue to offer them replacement phones.  And while at the August 15, 2018, hearing plaintiffs argued that these allegations amount to a breach of express warranty, the Court disagrees that plaintiffs plausibly allege that Google at any time failed to offer them replacement phones consistent with the Limited Warranty.  Plaintiffs may certainly amend their complaint to allege that Google stopped offering replacement phones in contravention with the Limited Warranty, but they have not done so here.

defective.

*Hewlett-Packard Co. v. Superior Court*, which relied on *Hicks*, is more relevant here. In that case, defendant HP appealed a grant of class certification. Specifically, HP appealed a finding that common issues predominated. *Id.* at 94. The court of appeals allowed a claim "that certain HP notebook computers contained types of inverters that HP knew would likely fail" sometime before the end of the product's "useful life," but did not touch the factual or legal merits of the claim. *Id.* at 95 ("While *Daugherty* may have implications for the *merits* of the underlying action, and indeed may serve to bar claims by plaintiffs that occurred outside of the warranty period, it does not affect a determination of class certification." (emphasis in original)). Therefore, this case is not the ringing endorsement of plaintiffs' express warranty claim that they represent it to be. *Hewlett-Packard Co. v. Superior Court* relied on the *Hicks* case, which dealt with defects in the foundation to homes. But many courts have rejected *Hicks* in the context of consumer goods. *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 851 (N.D. Cal. 2012) ("it is unclear whether *Hicks* applies to consumer products with limited lifespans such as computers—indeed, multiple district courts have concluded that it does not") (collecting cases).

The Court understands plaintiffs' outrage at Google's being able to replace a defective Pixel with another defective Pixel for 365 days straight.[4] It beggars reason and would appear to make hash of the spirit of the warranty. But the warranty provided a remedy, and as far as the Court can tell, Google abided by its remedy. At least one other court in this district has rejected an argument similar to the one plaintiffs make here. *Kent v. Hewlett-Packard Co.*, No. 09-cv-05341 JF PVT, 2010 WL 2681767, at *6 (N.D. Cal. July 6, 2010) (finding that limited warranty language that laptop would be "free from defects" did not mean that "recurring failures" in laptop would be considered as breaches

---

[4] Plaintiffs also briefly argue that allowing Google to replace one Pixel with another equally defective Pixel 'would render the protections of the Limited Warranty illusory, but do not elaborate on this point further in the briefing. Dkt. No. 51 at 17. The Court does not make any finding as to this argument because it is not properly before it.

of the limited warranty because HP did not warrant that the laptop's operation would be "uninterrupted or error-free"). "HP is not liable for breach of express warranty merely because a product manifests recurring failures during the warranty period. Rather, the question is whether Plaintiffs sought repairs, refunds, or replacements and, if so, whether HP responded appropriately under the warranty."[5] *Id.*

Similarly, in *Ferranti v. Hewlett-Packard Co.*, District Judge Edward J. Davila considered a breach of express warranty claim to be premised not on the "defect-free" language of the warranty, but rather on whether the defendant responded appropriately in remedying any problems with the product. No. 13-cv-03847 EJD, 2014 WL 4647962, at *6 (N.D. Cal. Sept. 16, 2014) ("HP argues that its one-year limited warranty is a warranty for repairing and replacing the product, not a promise that the use of the printer will be uninterrupted and error free."); *see also Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1019 (N.D. Cal. 2014) ("[W]hen Frenzel's initial second generation Jawbone UP malfunctioned, Jawbone issued him a replacement device. . . . . In doing so, Jawbone complied with its warranty obligations as described [in the limited warranty] . . . . When Frenzel's replacement device subsequently died, Jawbone refused to issue him an additional replacement[,] . . . [b]ut Frenzel has not alleged facts indicating that this occurred within the applicable warranty period. Absent such an allegation, Frenzel may not maintain his claims for breach of express warranty against Jawbone."); *Nygren v. Hewlett-Packard Co.*, No. 07-cv-05793 JW, 2008 WL 11399759, at *5 (N.D. Cal. Oct. 24, 2008) ("Courts have held that a manufacturer does not breach an express warranty if it offers to provide the

---

[5] The operative complaint states in the express warranty claim that the Limited Warranty's one year time limits is unconscionable. Google originally also moved to dismiss the express warranty claim based on the insufficiency of the unconscionability allegations in the complaint. *See* Dkt. No. 26 at 24; Dkt. No. 42 at 14-15. Even though Google did brief this argument, plaintiffs did not rebut it in any detail, instead arguing that unconscionability would be an issue for summary judgment. Based on the fact that this issue is under-briefed by plaintiffs, and the allegations of unconscionability are insufficient, the Court alerts plaintiffs that they must do more to allege, or provide evidence of, substantive *and* procedural unconscionability on a later motion. For purposes of this motion, however, the Court need not reach this issue, as it is unnecessary to the Court's decision on Google's motion to dismiss the express warranty claim.

remedies specified in the warranty.").

Therefore, the Court does not consider the alleged defect *by itself* to be a basis for the breach of express warranty claim. The precedents plaintiffs cite prove not to be favorable to them. Plaintiffs may have another avenue to challenge Google's conduct, but this is not it. Next, the Court evaluates whether Google fulfilled its duties under the Limited Warranty as to the remedy provided.

### 2. The Sufficiency of Google's Fulfillment of the Warranty's Remedies

The second question the Court must answer is whether Google's replacement of allegedly defective Pixels with other allegedly defective Pixels is a violation of the Limited Warranty. There are a series of policy arguments to be made on this point, but here the Court is concerned with whether Google's alleged conduct was valid under the Limited Warranty.

Plaintiffs cite *Horvath v. LG Elecs. Mobilecomm U.S.A., Inc*., No. 11-cv-01576 H-RBB, 2012 WL 2861160, at *6 (S.D. Cal. Feb. 13, 2012). *Horvath* is similar to this case in that it involved cell phones having an alleged manufacturing defect and a manufacturer that replaced the allegedly defective phones with other allegedly defective phones. Yet the difference between the two cases is that the warranty in *Horvath* significantly differed from the one presented to the Court. *Id.* at *6; *id.* at *4 (citing First Amended Complaint, Exhibit 1, "LG's Limited Warranty Statement"). LG's warranty guaranteed that the phone would be free from defects, but did not set forth a specific remedy. On the other hand, in this case, the Limited Warranty did not guarantee that the use of the Pixels would be "uninterrupted or error-free" and the warranty did set forth exclusive remedies. Dkt. No. 48-1 at 4-5. One of these remedies was that Google could "replace your Phone with a new or refurbished Phone functionally at least equivalent to yours[.]" *Id.*

This distinction makes the difference. In *Horvath*, LG "instructed consumers, including Plaintiffs, to take their defective G2X phones to their cell phone carrier to address the defects. . . . [and] Defendant breached because Plaintiffs undertook measures to remedy the G2X defects, in accordance with LG Electronics' warranty instructions,

including giving LG Electronics and its authorized sellers over ten opportunities to remedy the defects . . . ." *Id.* Importantly, the court in *Horvath* allowed the express warranty to survive on the following facts: "Plaintiffs allege that they were not made whole and instead received replacement G2X phones that also proved defective and afflicted with the same defects." *Id.* This supports plaintiffs' position in this case. Respectfully, however, the Court does not find this holding persuasive under these facts. This finding is not supported by any reasoning, and in any case, this case is distinguishable because Google specifically provided the conduct that plaintiffs complain of as a remedy in the Limited Warranty. On these facts, an express warranty claim does not lie.

Similarly, in *Nygren v. Hewlett-Packard Co.*, District Judge James Ware allowed a breach of express warranty claim to survive a motion to dismiss because a warranted repair during the warranty period did not cure the defect in a laptop. 2008 WL 11399759; *id.* at *5 (These allegations are sufficient to state a claim for breach of express warranty as to Plaintiff Nygren because they state that a malfunction occurred within the warranty period and that Defendant failed to repair, replace, or repurchase the defective product as required by the warranty terms."). In other words, HP did not provide the plaintiff in *Nygren* with the remedy it guaranteed under the warranty.

Plaintiffs also cite to *Rutledge v. Hewlett-Packard Co.*, 238 Cal. App. 4th 1164 (2015), for the proposition that "[t]he replacement of a defective product with another defective product constitutes a breach of express warranty when the defendant expressly warrants the product as free from defects in materials and workmanship." Dkt. No. 51 at 17. On its face, this language appears to be favorable to plaintiffs' warranty claim. In *Rutledge*, the case was on appeal from the trial court's grant of summary judgment against plaintiffs as to a breach of express warranty claim, amongst other things. HP's warranty on the notebooks warranted that if HP received notice of defects during the warranty period, HP had the option of either repairing or replacing the defective devices. *Rutledge*, 238 Cal. App. 4th at 1179. One of the named plaintiffs notified HP of an inverter defect within the warranty period and had her device repaired twice within the one year period.

1    *Id.* at 1182.  The inverter defect arose again months after the second repair.  *Id.*  What

2    allowed plaintiff's claim to survive was the fact that there was evidence in the record

3    showing that HP's authorized repair center tasked with replacing the defective inverters

4    did so incorrectly.  *Id.* at 1178 ("With regard to the Ambit inverters, appellants present

5    evidence of a second service note that was issued in November 2003 . . .  This service note

6    stated that the torque setting of Bizcom's automated screwdrivers used to install the Ambit

7    inverters was too high, resulting in solder cracking on the inverters.").

8           Thus, plaintiffs' argument that *Rutledge* gets them past Google's motion is strained.

9    In *Rutledge*, the warranty allowed HP to either repair or replace defective products.  *Id.* at

10   1179.  But what HP did wrong in that case is that it "failed to adequately repair [plaintiff's]

11   notebook, and did not return it to her in the condition as warranted."  *Id.* at 1183.  In other

12   words, HP did not fulfill its remedial obligations under the warranty.  As a result, *Rutledge*

13   is meaningfully distinguishable.

14          This case is different from *Horvath*, *Nygren*, or *Rutledge* because instead of

15   repairing the allegedly defective Pixels, Google opted to replace them.  The question of

16   whether it was valid under the express warranty to replace a defective Pixel with another

17   defective Pixel must be answered in the affirmative based on a plain reading of the Limited

18   Warranty.  This finding is also supported by case law within this district.  *In re Seagate*

19   *Tech. LLC Litig.*, 233 F. Supp. 3d 776, 782 (N.D. Cal. 2017) (Spero, C. Mag. J.) ("Under

20   the terms of the warranty, a replacement drive must only be 'functionally equivalent' to the

21   original product. . . . the Court holds that failure of a replacement drive—which Plaintiffs

22   characterize as 'replac[ing] defective Drives with defective Drives, . . . is not in itself a

23   breach of the express terms of Seagate's warranty, so long as Seagate provided a further

24   replacement upon request if the drive was still within warranty.");  *Bros. v. Hewlett-*

25   *Packard Co.*, No. 06-cv-02254 RMW, 2007 WL 485979, at *4 (N.D. Cal. Feb. 12, 2007)

26   ("While plaintiffs now make the argument that replacing the failed motherboard with a

27   motherboard equipped with the same GPU was inadequate, replacement or repair of

28   malfunctioning components during the life of the warranty is exactly what the Limited

Warranty provides. . . . HP could not have breached the Limited Warranty by acting in conformance with it."). It may be that plaintiffs may bring a *different* claim against Google, but on *these* facts—and based on the arguments made here—plaintiffs are ineligible to bring an express warranty claim.

Because plaintiffs have not presented a viable claim for breach of express warranty, the Court GRANTS Google's motion to dismiss, but gives plaintiffs LEAVE TO AMEND.

## B. The Breach of the Covenant of Good Faith and Fair Dealing Claim Survives.

Google moves to dismiss the claim for breach of the covenant of good faith and fair dealing, arguing that it fails for the same reasons that the breach of express warranty claim fails. Dkt. No. 42 at 15. Plaintiffs oppose Google's motion, and argue that their claim is "premised on Google's knowledge of the defect and concomitant exercise of its discretion under the Limited Warranty to refuse to provide effective free repairs or refunds, and instead to replace failed products with equally failure-prone products, thereby depriving consumers of the benefits of the warranty and increasing the likelihood of out-of-warranty failures." Dkt. No. 51 at 21.

"The elements of a claim of breach of the implied covenant are (1) the parties entered into a contract; (2) the plaintiff fulfilled its obligations under the contract; (3) any conditions precedent to the defendant's performance occurred; (4) the defendant unfairly interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the plaintiff was harmed by the defendant's conduct." *MH Pillars Ltd. v. Realini*, 277 F. Supp. 3d 1077, 1088 (N.D. Cal. 2017). Breaching a specific provision of a contract is not a prerequisite to state a claim under the covenant of good faith and fair dealing. *Carma Developers (Cal.), Inc. v. Marathon Dev. California, Inc.*, 2 Cal. 4th 342, 373 (1992). However, the covenant may not "be read to prohibit a party from doing that which is expressly permitted by an agreement." *Id.* at 374 ("implied terms should never be read to vary express terms"). "The general rule regarding the covenant of good faith is plainly subject to the exception that the parties may, by express provisions of the contract, grant

the right to engage in the very acts and conduct which would otherwise have been forbidden by an implied covenant of good faith and fair dealing. This is in accord with the general principle that, in interpreting a contract an implication should not be made when the contrary is indicated in clear and express words." *Id.* (ellipses, citations, and quotation marks omitted).

Here, the dispute is not about the elements of the claim; rather, the dispute is about whether plaintiffs are even eligible to bring this claim. The Court found that Google did not breach the express warranty under the facts presented in the FAC, and that Google acted in accordance with the Limited Warranty. But plaintiffs argue that "Google's inadequate performance is not 'expressly permitted' and frustrated Plaintiffs' 'reasonable expectations' under the warranty," and so Google's reliance on *Carma* is "misplaced." Dkt. No. 51 at 21 n.3. This inadequate performance was the replacement of defective Pixels with defective Pixels. Dkt. No. 26 at 25. For purposes of this motion, the Court agrees, and does not find Google showed that its conduct was "expressly permitted" and met with plaintiffs' reasonable expectations. The motion to dismiss is DENIED.

### C. The Breach of Implied Warranty of Merchantability and Magnuson-Moss Warranty Act Claims are Dismissed.

Google asserts plaintiffs may not bring an implied warranty claim because the Limited Warranty supersedes any implied warranty. Dkt. No. 42 at 16. Moreover, Google argues that if plaintiffs are unable to bring an express warranty claim, they also may not bring an implied warranty claim. Dkt. No. 54 at 11. In response, plaintiffs assert that while the Limited Warranty did contain a disclaimer on "any implied warranty of merchantability," that disclaimer only applied to issues with the devices *outside* of the one year Limited Warranty period. Dkt. No. 51 at 22. Here, the defect rendering the Pixels unusable in their ordinary function manifested themselves within one year. *Id.* It appears that plaintiffs seek damages for this alleged breach. Dkt. No. 26 at 27.

"The implied warranty of merchantability arises by operation of law rather than contract." *In re Nexus*, 293 F. Supp. 3d at 925 (citing *Hauter v. Zogarts*, 14 Cal. 3d 104,

Case No. 18-cv-00801 NC                14

(1975)).  The implied warranty guarantees not that the goods "precisely fulfill the expectation of the buyer," but instead that the goods meet "a minimum level of quality." *Am. Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1296 (1995) (citation omitted).  "The core test of merchantability is fitness for the ordinary purpose for which such goods are used." *Mexia v. Rinker Boat Co.*, 174 Cal. App. 4th 1297, 1303 (2009). Where the contract sets out a remedy, and "the remedy is expressly agreed to be exclusive," then it is the "sole remedy."  Cal. Comm. Code § 2719(1)(b).

Here, the sole remedy available to plaintiffs was to have their phones repaired, replaced, or to be refunded.  Dkt. No. 48-1 at 4.  The Limited Warranty set a one-year time limit for other warranties, including the implied warranty of merchantability: "GOOGLE EXPRESSLY DISCLAIMS ALL OTHER WARRANTIES AND CONDITIONS OF ANY KIND . . . ARISING FROM COURSE OF CONDUCT OR OTHERWISE, REGARDING THE PHONE, EXCEPT THAT ANY IMPLIED WARRANTIES OF MERCHANTABILITY . . . ARE LIMITED IN DURATION TO THE PERIOD OF THE EXPRESS WARRANTY ABOVE (EITHER ONE YEAR OR NINETY DAYS, DEPENDING ON WHETHER THE PHONE IS NEW OR REFURBISHED[).]"  *Id.* at 5.

Plaintiffs' phones' microphones allegedly failed within the one year period in which the implied warranty of merchantability applied.  Plaintiffs claim Google failed to repair or replace their phones.  Dkt. No. 51 at 22.  This is an odd claim for plaintiffs to make when two of them accepted replacement phones, and none claim that Google refused to offer them replacement phones, thereby living up to the "repair, replace, or refund" guarantee during the one year Limited Warranty period.  Dkt. No. 26 at 4, (plaintiff Weeks), 6 (plaintiff Helms), 7 (plaintiff McCloy).  And it is undisputed that the implied warranty of merchantability applied during one year.  The Court notes that there is no argument in the papers that the one year time limit should be invalidated, as there is in the complaint.  *Id.* at 27.  Therefore, because the Court is unable to find that plaintiffs are entitled to any relief outside of the Limited Warranty on this claim, the Court DISMISSES this claim WITH

LEAVE TO AMEND.[6]

Plaintiffs also seek to bring a claim under the Magnuson-Moss Warranty Act (MMWA), but an implied warranty claim under that statute also fails, as it rises and falls with the other warranty claims before the Court.

> The MMWA "allows a consumer to bring a suit where he claims to be damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under [the MMWA] or under a written warranty, implied warranty, or service contract." *Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405 (7th Cir. 2004) (internal quotations and citations omitted).

*In re Apple iPhone 3G Prod. Liab. Litig.*, 859 F. Supp. 2d 1084, 1089–90 (N.D. Cal. 2012). But the MMWA does not provide remedies for breaches of limited warranties. *Id.* at 1090. The MMWA allows consumers to enforce written and implied warranties by borrowing state law claims, meaning that a federal MMWA claim depends on the validity of state law warranty claims. *Id.*; *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 n.3 (9th Cir. 2008) ("the federal claims hinge on the state law warranty claims").

Therefore, because plaintiffs' state law warranty claims—both express and implied—do not survive this motion, the claim under the MMWA likewise fails. This claim is DISMISSED WITH LEAVE TO AMEND.

### D.     The Fraudulent Concealment Claim Survives.

Google seeks to dismiss plaintiffs' fraudulent concealment claim because it had no duty to disclose, and plaintiffs did not rely on any representations or omissions on its part. Dkt. No. 42 at 20. Google claims, using plaintiffs' own allegations, that the complaints regarding the Pixel were publicly available before any plaintiff bought his or her Pixel. *Id.* This means that information regarding the alleged defect was not in Google's exclusive knowledge, and so Google had no duty to disclose the alleged defect. *Id.*

"Under California law, the elements of a common-law claim for fraudulent

---

[6] The exception to this finding is with respect to plaintiffs' allegations that the one year time limit on the implied warranty of merchantability should be invalidated. Those allegations were not challenged in this motion.

omission are: (1) the defendant concealed or suppressed a material fact; (2) the defendant was under a duty to disclose the fact to the plaintiff; (3) the defendant intentionally concealed or suppressed the fact with intent to defraud the plaintiff; (4) the plaintiff was unaware of the fact and would have acted differently if she had known of the concealed or suppressed fact; and (5) the plaintiff sustained damage as a result of the concealment or suppression." *Ralston v. Mortg. Inv'rs Grp., Inc.*, No. 08-cv-00536 JF PVT, 2010 WL 3211931, at *3 (N.D. Cal. Aug. 12, 2010) (citing *Hahn v. Mirda*, 147 Cal. App. 4th 740, 748 (2007)). Moreover, under Federal Rule of Civil Procedure 9(b), plaintiffs alleging fraud must "state with particularity the circumstances constituting fraud or mistake."

As to the second element, "there are four circumstances in which an obligation to disclose may arise: (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but also suppresses some material facts." *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 987 (N.D. Cal. 2010), *aff'd*, 462 Fed. Appx. 660 (9th Cir. 2011). Under the second circumstance, "[e]xclusivity is not applied with rigidity." *Czuchaj v. Conair Corp.*, No. 13–CV–1901 BEN (RBB), 2014 WL 1664235, at *4 (S.D. Cal. Apr. 17, 2014); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 960 (N.D. Cal. 2014). Moreover, "exclusivity is analyzed in part by examining whether the defendant had "superior' knowledge of the defect." *Johnson v. Harley-Davidson Motor Co. Grp., LLC*, 285 F.R.D. 573, 583 (E.D. Cal. 2012). In addition, "exclusive knowledge is not automatically defeated by the presence of information online." *Czuchaj*, 2014 WL 1664235, at *4 (collecting cases).

First, it is manifest that knowledge of a defect that would render a phone unfit for its normal use is material, and plaintiffs allege Google concealed or suppressed this fact.

As to the second element, plaintiffs allege "Google had a duty to disclose the microphone defect because it was within Google's exclusive knowledge." Dkt. No. 26 at 32-33. As noted in the complaint, "[o]n November 8, 2016—before any Plaintiff bought

their phone—Google reiterated its awareness of [the microphone defect], extending 'apologies to anyone who is encountering issues with the mic,' and stating it had not yet determined a root cause . . . ." *Id.* at 14.

Though the Court has a hard time understanding how Google engaged in an act of fraudulent omission if it publicly acknowledged the fact giving rise to the omission claim, the Court also recognizes that people do not necessarily look at consumer complaints and reviews online before they purchase a phone. For instance, to look at the consumer complaints regarding the Pixel and Google's responses, a prospective buyer of the phone would have to find the following website: https://productforums.google.com/forum/#!forum/phone-by-google, which is a *far* different site than the Google Store website where such a buyer would actually purchase the phone.[7] *Id.* at 11-12. Plaintiffs allege that Google knew of the alleged defect at least since the day the phone was released, and if it did not know before the launch date, it should have through pre-release testing. *Id.* at 12, 16-17. The Court recognizes Google's position that while it knew *something* was causing the phone to malfunction since the day after the phone's launch, it did not know what the problem was, and originally believed it was a software problem. August 15, 2018, Hearing. Moreover, it is undisputed that Google did not itself manufacture the phone, HTC did. Dkt. No. 54 at 14. But it is plaintiffs' well-pleaded allegations that the Court is required to accept as true, and they allege Google's knowledge well before they purchased their phones. Plaintiffs nudge this claim past the plausibility line.

Based on the above, the Court is disinclined to find that no duty existed, particularly because it is Google that knows if it knew about the defect, and when it knew it. *Johnson*, 285 F.R.D. at 583; *In re MyFord*, 46 F. Supp. 3d at 960 (finding a duty at the motion to dismiss stage where there was some public knowledge about the problems with a car "infotainment system," but not full public knowledge of the severity of the problem (i.e., that the problem was unfixable)); *but see Ferranti*, 2014 WL 4647962, at *5 ("Plaintiffs do

---

[7] That website is: https://web.archive.org/web/20161005090908/https://store.google.com/product/pixel_phone

not allege with particularity how HP had exclusive knowledge of material facts not known to Mr. Martinho when the complaint alleges that there were consumer complaints posted on HP Support Forums and poor reviews on other websites"). The Court is inclined to take the more cautious approach here and wait for the parties to discover facts that will demonstrate whether or not Google did in fact have a duty to disclose information that was allegedly exclusively within its knowledge.

Plaintiffs also argue Google had a duty to disclose the microphone defect because it made "partial representations" as to the Pixel's voice-activated Google Assistant feature. Dkt. No. 26 at 32-33; Dkt. No. 51 at 29. Because the Court finds that Google plausibly had a duty to disclose due to its "exclusive knowledge," the Court does not discuss the duty to disclose under this circumstance further.

Third, plaintiffs allege that Google intentionally concealed or suppressed the defect with the intent to defraud consumers, including plaintiffs. *See* Dkt. No. 26 at 33.

Fourth, plaintiffs allege that they relied on Google's representations, as demonstrated by their allegation that had they known of the microphone defect, they would have behaved differently (i.e., they would not have bought the phone, or would have bought it at the lower price point, or they would have returned it). Dkt. No. 51 at 25-26; *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) ("To prove reliance on an omission, a plaintiff must show that the defendant's nondisclosure was an immediate cause of the plaintiff's injury-producing conduct. . . . A plaintiff may do so by simply proving 'that, had the omitted information been disclosed, one would have been aware of it and behaved differently.' " (quoting *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1093 (1993)).

Fifth, plaintiffs sufficiently allege they were damaged by Google's alleged omission of the microphone defect. Dkt. No. 26 at 33.

The motion to dismiss the fraudulent concealment claim is DENIED.

### E. The California Consumer Protection Law Claims Survive.

Google also moves to dismiss plaintiffs' California consumer protection claims.

## 1. California Consumers Legal Remedies Act, Cal. Civ. Code § 1750

Plaintiffs allege violations of several subsections of the CLRA, California Civil Code § 1770(a), which lists proscribed practices. Specifically, plaintiffs allege that Google engaged in the following proscribed practices:

> (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he or she does not have.

> (7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another.

> (9) Advertising goods or services with intent not to sell them as advertised.

> (19) Inserting an unconscionable provision in the contract.

Cal. Civ. Code § 1770(a); Dkt. No. 26 at 31.

Plaintiffs' CLRA allegations sound in fraud, except for under § 1770(a)(19). Dkt. No. 26 at 31. Plaintiffs allege that Google: "[(1)] Represented that the Pixels have characteristics, uses, and benefits they do not have; [(2)] Represented that the Pixels are of a standard, quality, or grade that they are not; [(3)] Advertised the Pixels with the intent not to sell them as advertised; and [(4)] Inserted unconscionable warranty limitations and disclaimers in its contracts with consumers." *Id.*

### a. Notice Requirement

Google inserted a footnote in its motion arguing that the warranty and CLRA claims should be dismissed for failure to provide Google with adequate pre-suit notice under California Civil Code § 1782(d). Dkt. No. 42 at 11 n.1. In response to Google's argument, plaintiffs argue two points, both of which are meritorious.

Section 1782(d) requires that an action brought for damages under the CLRA not be commenced less than 30 days after notice is sent to the defendant and an opportunity given to the defendant to cure the alleged violation by repairing or replacing the good, or providing some other rectification. However, a complaint for injunctive relief *only* may be

1    filed without notice, and 30 days after such notice, a plaintiff may amend his or her

2    complaint to request damages.  Cal. Civ. Code § 1782(d).

3          Plaintiffs argue that they provided Google with actual notice on February 1, 2018,

4    before they filed their original complaint on February 6, 2018.  Dkt. No. 51 at 15-16.

5    Plaintiffs did not request damages under the CLRA in the original complaint, instead only

6    requesting injunctive relief.  *Id.* at 16.  It was only in the amended complaint, filed two

7    months later that plaintiffs requested monetary damages under the CLRA.  Plaintiffs argue

8    that this was permissible.  *Id.* (citing *Morgan v. AT&T Wireless Servs., Inc.*, 177 Cal. App.

9    4th 1235, 1259-60 (2009)).  Second, plaintiffs argue, Google was well-aware of the alleged

10   defect, and so it can hardly be said that Google had not been given an opportunity to cure.

11   *Id.*  In any event, courts grant leave to amend with liberality.  So too here.  The Court finds

12   that because plaintiffs did not request monetary damages as to the CLRA claim in the

13   original complaint, plaintiffs provided adequate notice to Google.

14                    **b.    Fraudulent Concealment**

15         Before turning to the allegations of fraudulent concealment, the Court notes its

16   confusion as to the arguments in Google's motion.  The Court is unclear on exactly which

17   grounds Google moves to dismiss the CLRA claim, as the opposition and reply briefs

18   contain nary a reference to the CLRA.  Instead, those briefs are aimed at defeating

19   plaintiffs' fraudulent concealment allegations.  *See e.g.*, Dkt. No. 54 at 12.

20         The Court declined to dismiss the fraudulent concealment claim in section III.D.

21   Based on the lack of briefing on *any other* reason that the Court should dismiss the CLRA

22   claim, the Court DENIES the motion to dismiss the CLRA claim.

23              **2.    Unfair Competition Law, Cal. Bus. & Prof. Code § 17200**

24         In the amended complaint, plaintiffs allege Google engaged in unlawful, unfair, *and*

25   fraudulent conduct.  Dkt. No. 26 at 28-30.  Google moves to dismiss this claim under each

26   prong of the UCL.  Google argues plaintiffs may not bring a UCL claim for four reasons:

27   (1) plaintiffs may not seek injunctive relief because they have not alleged they want to buy

28   another Pixel in the future: (2) plaintiffs do not allege any specific violations of the Song-

Beverly Warranty Act, Cal. Civ. Code § 1790, so as to bring a claim for "unfair" acts; (3) plaintiffs have not established Google engaged in "unfair" acts; and (4) plaintiffs do not sufficiently allege Google engaged in fraudulent conduct. Dkt. No. 42 at 22-23.

As to the first argument, that plaintiffs may not bring a UCL claim requesting injunctive relief because they do not allege they want to buy another Pixel, this argument lacks merit. Plaintiffs specifically allege they "would like to buy more Google mobile phone products, [but] they will not do so unless Google takes sufficient steps to cure the microphone defect and ensure the accuracy of its representations about its Pixel product line." Dkt. No. 26 at 8. In addition, Google contends plaintiffs may not seek an equitable remedy, like restitution, because plaintiffs have not shown that the damages they seek in connection with their warranty and fraud claims are insufficient. Dkt. No. 42 at 22. At the pleading stage, the Court disagrees that it must limit plaintiffs' potential damages.

Second, Google argues plaintiffs do not allege a specific violation of the Song-Beverly Warranty Act. Plaintiffs do specify a violation, though the Court is dissatisfied with plaintiffs' lazy pleading. *Id.* at 28-29. ("Google's conduct is unfair in violation of the UCL because it violates California public policy, legislatively declared in the Song-Beverly Warranty Act, requiring a manufacturer defined as a person or entity that 'manufactures, assembles, or produces consumer goods'—to ensure that goods it places on the market are fit for their ordinary and intended purposes."). This claim requires more explanation in the complaint if plaintiffs seek to use the Act as a basis for "unfairness" under the UCL. Yet there is an even bigger problem. The named plaintiffs are not California citizens, and the Song-Beverly Warranty Act is limited to sales of goods within the state of California. *In re Nexus 6P*, 293 F. Supp. 3d at 931 (citing Cal. Civ. Code § 1792). This is a more significant problem with bringing an unfairness claim than a simple pleading problem. In amending their UCL claim, plaintiffs must consider whether the Song-Beverly Warranty Act is an appropriate vehicle for an "unfairness" claim.

Third, as to Google's argument that plaintiffs have not sufficiently alleged "unfair" conduct, the Court disagrees. Dkt. No. 51 at 32. The "unfair" prong of the UCL creates a

claim for a business practice that is unfair, even if not proscribed by some other law. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003). The UCL does not provide a definition for "unfair" conduct, and the definition has long been "in flux." *See Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 735–36 (9th Cir. 2007). Some California appellate courts apply this "balancing" test, which requires courts to "weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1169 (9th Cir. 2012) (internal quotation marks omitted). "[P]arties may proceed with a UCL claim under the balancing test by either alleging immoral, unethical, oppressive, unscrupulous, or substantially injurious conduct by Defendants or by demonstrating that Defendants' conduct violated an established public policy." *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 990 (N.D. Cal. 2016). There is another test, the three-part test set forth in § 5 of the Federal Trade Commission Act: "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." *Camacho v. Auto. Club of Southern California*, 142 Cal. App. 4th 1394 (2006). However, this test is inappropriate in the consumer context, and Google is correct that this test is geared towards harm to competition, not to consumers specifically. *Lozano*, 504 F.3d at 735. In any event, the Court finds it unnecessary to apply the § 5 test, because the Court relies on the balancing test.

For purposes of this motion, the Court is disinclined to dismiss the UCL claim under the unfairness prong. The Court is unwilling, at a motion to dismiss, to find that Google's actions were not at least oppressive or substantial injurious to plaintiffs, without justification. *See Horvath*, 2012 WL 2861160, at *11.

Fourth, as to fraud, the Court already found that plaintiffs sufficiently stated a claim for fraudulent concealment under the facts provided in the operative complaint. The argument to dismiss on this basis therefore lacks merit.

In sum, the motion to dismiss the UCL claim is DENIED.

## IV.   CONCLUSION

For the reasons stated above, the Court GRANTS Google's motion to dismiss WITH LEAVE TO AMEND.  Plaintiffs must file an amended complaint by September 6, 2018.  Defendant must either answer the complaint within 21 days of the Second Amended Complaint being filed or re-move to dismiss.

**IT IS SO ORDERED.**

Dated:  August 16, 2018

_____
NATHANAEL M. COUSINS
United States Magistrate Judge