1  Daniel C. Girard (State Bar No. 114826)
2  Jordan Elias (State Bar No. 228731)
   Adam E. Polk (State Bar No. 273000)
3  Simon S. Grille (State Bar No. 294914)
   **GIRARD SHARP LLP**
4  601 California Street, Suite 1400
   San Francisco, CA 94108
5  Tel: (415) 981-4800
   *dgirard@girardsharp.com*
6  *jelias@girardsharp.com*
   *apolk@girardsharp.com*
7  *sgrille@girardsharp.com*
8
   Benjamin F. Johns (*pro hac vice*)
9  Andrew W. Ferich (*pro hac vice*)
   Zachary P. Beatty (*pro hac vice*)
10 Beena M. McDonald (*pro hac vice*)
   **CHIMICLES SCHWARTZ KRINER**
11 **& DONALDSON-SMITH LLP**
   One Haverford Centre
12 361 West Lancaster Avenue
   Haverford, PA 19041
13 Telephone: (610) 642-8500
   *bfj@chimicles.com*
14 *awf@chimicles.com*
15 *zpb@chimicles.com*
   *bmm@chimicles.com*
16
17 *Interim Class Counsel*

18                **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
19                      **SAN JOSE DIVISION**

20 PATRICIA WEEKS, ALICIA HELMS, BRIAN       Case No. 5:18-cv-00801-NC
21 MCCLOY, and ADRIAN ALCARAZ, on
   behalf of themselves and all others similarly    **PLAINTIFFS' NOTICE OF MOTION**
22 situated,                                        **AND MOTION FOR PRELIMINARY**
                                                    **APPROVAL OF CLASS ACTION**
23                          Plaintiffs,             **SETTLEMENT, AND MEMORANDUM**
                                                    **OF POINTS AND AUTHORITIES IN**
24          v.                                      **SUPPORT THEREOF**

25 GOOGLE LLC,                                      Date: June 5, 2019
26                                                  Time: 2:00 p.m.
                           Defendant.               Courtroom: 5, 4th Floor
27                                                  Judge: Hon. Nathanael Cousins

28                                                  **REDACTED - FILED UNDER SEAL**

---

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 18-cv-00801-NC

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION ................................................................................. vi

MEMORANDUM OF POINTS AND AUTHORITIES .......................................................... 1

I.     INTRODUCTION ...................................................................................................... 1

II.    STATEMENT OF ISSUES TO BE DECIDED ......................................................... 2

III.   BACKGROUND ........................................................................................................ 2

       A.    Plaintiffs' Allegations ................................................................................... 3

       B.    Early Case Activities and Priority Discovery ............................................... 3

       C.    The Court's Motion to Dismiss Opinion ....................................................... 4

       D.    Fact and Expert Discovery ............................................................................ 4

       E.    Plaintiffs' Motion for Class Certification ..................................................... 6

       F.    The Settlement Negotiations ......................................................................... 6

IV.    SUMMARY OF SETTLEMENT TERMS ................................................................. 7

       A.    The Settlement Class ..................................................................................... 7

       B.    Settlement Consideration .............................................................................. 7

       C.    Distribution of Settlement Fund .................................................................... 9

       D.    Class Notice ................................................................................................ 13

       E.    CAFA Notice ............................................................................................... 13

       F.    Release of Claims ........................................................................................ 13

       G.    Attorneys' Fees and Expenses, and Service Awards for the Class
             Representatives ............................................................................................ 14

       H.    The Settlement Administrator ...................................................................... 14

V.     ARGUMENT ........................................................................................................... 15

       A.    The 2018 Amendments to Rule 23(e) ......................................................... 15

       B.    The Settlement Is Fair, Reasonable, and Adequate ..................................... 15

       C.    The Court Will Be Able to Certify the Class for Purposes of Settlement. ... 21

       D.    The Proposed Class Notice and Plan for Dissemination Are Reasonable and
             Should Be Approved ................................................................................... 25

VI.    CONCLUSION ........................................................................................................ 25

i

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Bedolla*
  787 F.3d 1218 (9th Cir. 2015)..................................................................15

*Amchem Prods. v. Windsor*
  521 U.S. 591 (1997) ..................................................................................23

*Anderson v. Samsung Telecommc'ns Am., LLC*
  2014 WL 11430910 (C.D. Cal. Oct. 20, 2014) ......................................20

*Asghari v. Volkswagen Grp. of Am., Inc.*
  2015 WL 12732462....................................................................................24

*Bellinghausen v. Tractor Supply Co.*
  306 F.R.D. 245 (N.D. Cal. 2015) .............................................................14

*Burden v. SelectQuote Ins. Servs.*
  2013 WL 1190634 (N.D. Cal. Mar. 21, 2013) ........................................16

*Butler v. Porsche Cars N. Am.*
  2017 WL 1398316 (N.D. Cal. Apr. 19, 3017)..........................................20

*Butler v. Sears, Roebuck & Co.*
  727 F.3d 796 (7th Cir. 2013).....................................................................24

*Date v. Sony Elecs., Inc.*
  2013 WL 3945981 (E.D. Mich. July 31, 2013)........................................13

*Ebarle v. Lifelock, Inc.*
  2016 WL 234364 (N.D. Cal. Jan. 20, 2016) ...........................................21

*Federal Ins. Co. v. Caldera Med., Inc.*
  2016 WL 5921245 (C.D. Cal. Jan. 25, 2016)..........................................16

*Fitzhenry-Russell v. Keurig Dr. Pepper, Inc.*
  No. 5:17-cv-00564 (N.D. Cal. Jan. 10, 2019) .........................................18

*Free Range Content, Inc. v. Google, LLC*
  2019 U.S. Dist. LEXIS 47380 (N.D. Cal. Mar. 21, 2019) ..........................18

*Gascho v. Global Fitness Holdings, LLC*
  2014 WL 1350509 (S.D. Ohio Apr. 4, 2014)..........................................13

*Gold v. Lumber Liquidators, Inc.*
  323 F.R.D. 280 (N.D. Cal. 2017) ......................................................22, 23

ii

*Haag v. Hyundai Motor Am.*
2019 WL 1029002 (W.D.N.Y. Mar. 5, 2019) .................................................................20

*Hanlon v. Chrysler Corp.*
150 F.3d 1011 (9th Cir. 1998) ......................................................................22, 25

*Hendricks v. StarKist Co.*
2015 WL 4498083 (N.D. Cal. July 23, 2015) ...............................................................19

*Horvath v. LG Electronics MobileComm U.S.A., Inc.*
No. 3:11-cv-01576-H-RBB (S.D. Cal. Jan. 14, 2014) ..................................................19

*In re Am. Express Fin. Advisors Litig.*
No. 04 Civ. 1773 (DAB) (S.D.N.Y.)...........................................................................12

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab. Litig.*
2019 WL 536661 (N.D. Cal. Feb. 11, 2019)............................................................15, 22

*In re Haier Freezer Consumer Litig.*
2013 WL 2237890 (N.D. Cal. May 21, 2013) ...............................................................21

*In re Lidoderm Antitrust Litig.*
No. 3:14-md-02521-WHO (N.D. Cal. Feb. 21, 2017) ..................................................23

*In re Mego Fin. Corp. Sec. Litig.*
213 F.3d 454 (9th Cir. 2000) ......................................................................................21

*In re MyFord Touch Consumer Litig.*
2016 WL 6873453 (N.D. Cal. Nov. 22, 2016) ...............................................................20

*In re MyFord Touch Consumer Litig.*
No. 13-cv-03072-EMC (N.D. Cal. Mar. 28, 2019) .......................................................18

*In re Oracle Sec. Litig.*
1994 WL 502054 (N.D. Cal. June 16, 1994) ................................................................18

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*
2019 WL 359981 (E.D.N.Y. Jan. 28, 2019)...............................................................15

*In re Seagate Tech. LLC*
326 F.R.D. 223 (N.D. Cal. 2018) ...............................................................................20

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*
2016 WL 3648478 (N.D. Cal. July 7, 2016) ................................................................19

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*
2016 WL 6778406 (N.D. Cal. Nov. 16, 2016)...............................................................18

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 18-cv-00801-NC

*In re: Sony VAIO Computer Notebook Trackpad Litigation*
No. 3:09-cv-02109 (S.D. Cal. Aug. 7, 2017) ....................................................18

*J.L. v. Cissna*
2019 WL 415579 (N.D. Cal. Feb. 1, 2019)......................................................21

*K.H. v. Secretary of Dep't of Homeland Sec.*
2018 WL 6606248 (N.D. Cal. Dec. 17, 2018) ................................................13

*Kacsuta v. Lenovo (U.S.) Inc.*
2014 WL 12585783 (C.D. Cal. Sept. 15, 2014).........................17, 21, 23, 24

*Kulesa v. PC Cleaner, Inc.*
2014 WL 12581769 (C.D. Cal. Feb. 10, 2014) ...............................................17

*LaGarde v. Support.com, Inc.*
2012 WL 13034899 (N.D. Cal. Nov. 2, 2012) ................................................17

*Linney v. Cellular Alaska P'ship*
151 F.3d 1234 (9th Cir. 1998)..............................................................16, 19

*Lockabey v. Am. Honda Motor Co.*
No. 37-100-00087755-CBU-BT-CTL (Cal. Super.) ......................................12

*Lynch v. Motorola Mobility LLC d/b/a Motorola*
No. 1:16-cv-04524 (N.D. Ill.)...........................................................................12

*Mendez v. C-Two Grp., Inc.*
2017 WL 1133371 (N.D. Cal. Mar. 27, 2017) ...............................................16

*Mendoza v. Hyundai Motor Co., Ltd.*
2017 WL 342059 (N.D. Cal. Jan. 23, 2017) ..................................................19

*Mergens v. Sloan Valve Co.*
2017 WL 9486153 (C.D. Cal. Sept. 18, 2017)................................................23

*Mullins v. Premier Nutrition Corp.*
2016 WL 1535057 (N.D. Cal. Apr. 15, 2016)................................................24

*Nat'l Rural Telecoms. Coop. v. DIRECTV, Inc.*
221 F.R.D. 523 (C.D. Cal. 2004) ....................................................................16

*One Unnamed Deputy Dist. Attorney v. Cty. of Los Angeles*
2011 WL 13128375 (C.D. Cal. Jan. 24, 2011)...............................................24

*Parsons v. Ryan*
754 F.3d 657 (9th Cir. 2014)............................................................................22

iv

*Pulaski & Middleman, LLC v. Google, Inc.*
   802 F.3d 979 (9th Cir. 2015)...................................................................24

*Rodriguez v. Hayes*
   591 F.3d 1105 (9th Cir. 2010)...............................................................21

*Spann v. J.C. Penney Corp.*
   314 F.R.D. 312 (C.D. Cal. 2016) ...........................................................20

*Staton v. Boeing Co.*
   327 F.3d 938 (9th Cir. 2003)...................................................................22

*Swinton v. SquareTrade, Inc.*
   2019 WL 617791 (S.D. Iowa Feb. 14, 2019) ........................................15

*Tyson Foods, Inc. v. Bouaphakeo*
   136 S. Ct. 1036 (2016) ............................................................................23

*Van Lith v. iHeartMedia + Entm't, Inc.*
   2017 WL 1064662 (E.D. Cal. Mar. 20, 2017).......................................17

*Wahl v. Yahoo! Inc.*
   2018 WL 6002323 (N.D. Cal. Nov. 15, 2018)........................................25

*Walsh v. CorePower Yoga LLC*
   2017 WL 589199 (N.D. Cal. Feb. 14, 2017)..........................................25

*Warner v. Toyota Motor Sales, U.S.A., Inc.*
   2016 WL 8578913 (C.D. Cal. Dec. 2, 2016)..........................................24

*Wolin v. Jaguar Land Rover North Am., LLC*
   617 F.3d 1168 (9th Cir. 2010).................................................................24

**Statutes**

15 U.S.C. § 2301 ..............................................................................................3

28 U.S.C. § 1715 .......................................................................................vii, 13

Cal. Bus. & Prof. Code § 17200.................................................................3, 4

Cal. Civ. Code § 1750 .................................................................................3, 4

**Rules**

Fed. R. Civ. P. 23 ...................................................................................*passim*

v

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on June 5, 2019 at 2:00 p.m., or as soon thereafter as the matter may be heard by the Honorable Nathanael Cousins of the United States District Court for the Northern District of California, San Jose Division, located at 280 South 1st Street, San Jose, California 95113, Plaintiffs will and hereby do move for entry of the proposed Preliminary Approval Order, and request that the Court set the following schedule for settlement proceedings:

| Event | Proposed Deadline |
|---|---|
| Class Action Fairness Act notice to state and federal officials, under 28 U.S.C. § 1715 | Within 10 days after filing of this motion |
| Notice campaign to begin with website notice | No later than 10 days after entry of preliminary approval order |
| Notice to be substantially completed (the "Notice Date") | 60 days after entry of preliminary approval order |
| Plaintiffs to move for final approval of the settlement | At least 35 days before the deadline for submitting objections |
| Plaintiffs to move for attorneys' fees, expenses, and service awards | At least 35 days before the deadline for submitting objections |
| Deadline for the submission of objections and requests for exclusion | 60 days after the Notice Date |
| Deadline to file claim (the "Claims Deadline") | 60 days after the Notice Date |
| Date on which settlement funds will be distributed to claimants (the "Distribution Date") | 30 days after the Effective Date |
| Final Fairness Hearing | At least 60 days after the objection and exclusion deadline |

The Motion is based on this Notice of Motion, the incorporated memorandum of points and authorities, the Joint Declaration of Daniel C. Girard and Benjamin F. Johns ("Joint Decl.") filed herewith, the Declaration of Carla Peak, the Declaration of Richard Dubois, the record in this action, the argument of counsel, and any other matters the Court may consider.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Plaintiffs seek preliminary approval of a $7,250,000 non-reversionary cash settlement resolving this multistate litigation and providing substantial compensation to consumers who purchased a first-generation Google Pixel or Pixel XL smartphone manufactured before January 4, 2017. The settlement was negotiated with an eye towards the Northern District's Procedural Guidance for Class Action Settlements ("Guidelines"),[1] and meets all the criteria for preliminary approval under Rule 23 of the Federal Rules of Civil Procedure. The settlement was reached at a settlement conference with Magistrate Judge Donna Ryu on February 22, 2019, following a motion to dismiss ruling, merits discovery with 18 depositions, the production and review of nearly half a million pages of documents, contested motion practice, and expert work and discovery. The developed record gave the parties a thorough understanding of the strengths and weaknesses of their positions in this case and informed its settlement.

All persons within the United States who purchased, other than for resale, a Pixel[2] manufactured before January 4, 2017 (a "Class Phone") and did not receive a replacement Pixel manufactured after January 3, 2017, or refurbished after June 5, 2017, are eligible to claim a share of the proposed settlement. The plan of allocation provides for greater compensation to class members who experienced the alleged Audio Defect—an alleged structural problem on the motherboard that could lead to microphone or speaker failures. The plan reserves a more modest recovery for the group of consumers, many of whom no longer use the phone, who purchased a Class Phone and have never reported experiencing the alleged Audio Defect. The plan also reimburses those who paid insurance deductibles because they experienced the alleged product failures. Given typical participation rates in class action settlements, Class Counsel believe the fund will be adequate to pay the maximum amounts provided for in the plan of allocation to all class members who make the minimal effort needed to participate.

---

[1] https://www.cand.uscourts.gov/ClassActionSettlementGuidance.

[2] Unless otherwise noted, capitalized terms have the meaning ascribed to them in the Settlement Agreement, filed concurrently herewith as Exhibit A to the Joint Decl.

Continued litigation carried considerable risk of a lesser recovery or none at all. Google vigorously denies liability, has opposed class certification, and intends to move for summary judgment if the litigation proceeds. To prevail at trial, Plaintiffs first would have had to win their motion to certify a consumer class, overcoming Google's argument that individual inquiries are required to determine whether class members suffered any actual injury. Plaintiffs then would have had to defeat a motion for summary judgment, maintain class certification through entry of judgment, and overcome numerous substantive defenses—including Google's arguments that it lacked sufficient knowledge to give rise to a duty to disclose the alleged defect, and that it owes no damages because it provided adequate warranty service. Even if Plaintiffs were to have certified a class and prevailed at trial, fairly allocating a trial judgment would have required some form of claims procedure to ensure adequate compensation for class members who allegedly suffered audio failures on a single Pixel or multiple Pixels, in contrast to those who used a Pixel throughout its useful life without incident. Through the settlement, class members have the opportunity to achieve a certain recovery with the benefit of a consumer-friendly procedure supervised by an experienced claims administrator. The settlement is a win for consumers and merits preliminary approval.

Plaintiffs respectfully request that the Court enter the proposed order to authorize notice to the class and schedule further settlement proceedings.

## II.     STATEMENT OF ISSUES TO BE DECIDED

Should the Court, pursuant to Fed. R. Civ. P. 23(e)(1)(B), preliminarily approve the parties' settlement, authorize notice to the proposed class, and schedule further settlement proceedings?

## III.     BACKGROUND

Plaintiffs respectfully refer the Court to the Joint Declaration of Daniel C. Girard and Benjamin F. Johns in Support of Plaintiffs' Motion for Preliminary Approval of Class Settlement ("Joint Decl.") for a more detailed description of the factual and procedural history of this case, the claims, counsel's investigation and settlement negotiations, the risks and uncertainties presented in this litigation, and other factors showing this Settlement is fair, reasonable, and adequate. As described in the Joint Declaration and below, the parties vigorously litigated this case for many months before agreeing to a settlement in principle.

### A.      Plaintiffs' Allegations

Plaintiffs allege that a defect in Pixels manufactured before January 4, 2017 results in microphone or speaker failures. *See* Second Amended Complaint, Dkt. No. 83 ¶¶ 1-2; *see also* Motion for Class Certification, Dkt. No. 94 at 2. The alleged Audio Defect results from cracks in solder balls that connect the computer chip responsible for the Pixel's audio functions—the "audio codec"—to the Pixel's main circuit board. Dkt. No. 83 ¶ 73; Dkt. No. 94 at 7-8. Plaintiffs learned through discovery that Pixels manufactured before January 4, 2017 ███████████████████████████████ surrounding the audio codec. Dkt. No. 94 at 7-10. Plaintiffs allege that, ███████████, the solder balls that connect the audio codec to the Pixel's circuit board are prone to cracking, which causes the alleged Audio Defect to manifest. *Id.*

### B.      Early Case Activities and Priority Discovery

After initiating this case on February 6, 2018, Plaintiffs filed an amended complaint on April 11. Dkt. Nos. 1, 26.[3] After their Rule 26(f) conference, the parties negotiated a prioritized discovery plan. Joint Decl., ¶ 8. Pursuant to the parties' agreement, and in response to Plaintiffs' priority discovery requests, Google produced documents regarding the named plaintiffs and portions of Google's root cause analysis relating to the reported Pixel audio failures. *Id.* Google also responded to eight interrogatories focused on the number of Pixels sold in the United States, Pixel return rates, and Google's knowledge of the alleged defect. *Id.* As part of the parties' agreement, Plaintiffs deposed Google's Rule 30(b)(6) designee covering five agreed-upon topics. *Id.*

On May 17, following the initial case management conference, the Court appointed Girard Sharp LLP and Chimicles Schwartz Kriner & Donaldson-Smith LLP as interim class counsel ("Class Counsel"). Dkt. No. 46. The Court's order adopted Class Counsel's proposed protocol for the recording, submission, and review of attorneys' fees and expenses incurred by counsel for Plaintiffs in

---

[3] Both the original and amended complaints assert claims for (i) breach of express warranty; (ii) breach of the implied covenant of good faith and fair dealing; (iii) breach of the implied warranty of merchantability; (iv) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*; (v) violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*; (vi) violation of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*; and (vii) fraudulent concealment. *Id.*

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 5:18-cv-00801-NC

1   this action. Dkt. Nos. 45, 46. Pursuant to the timekeeping protocol, Class Counsel have filed summary

2   time and expense reports for each quarter. Dkt. Nos. 57, 88, 122, 146.

3        **C.**     **The Court's Motion to Dismiss Opinion**

4        On May 10, Google filed a motion to dismiss the then-operative First Amended Complaint. *See*

5   Dkt. No. 42. The parties briefed the motion, and the Court heard oral argument on August 15. *See* Dkt.

6   Nos. 51, 54, 63. On August 16, the Court granted in part and denied in part the motion. *See* Dkt. No.

7   66. The Court dismissed, without prejudice, Plaintiffs' claims for breach of warranty and violation of

8   the Magnuson-Moss Warranty Act. *Id.* The Court denied Google's motion with respect to Plaintiffs'

9   claims for breach of the covenant of good faith and fair dealing, fraudulent concealment, and violation

10  of California consumer protection statutes. *See id.* The Court declined to dismiss the remaining claims

11  but also noted challenges that Plaintiffs would face pursuing their claims going forward. With respect

12  to Plaintiffs' fraud claims, the Court stated that it "has a hard time understanding how Google engaged

13  in an act of fraudulent omission if it publicly acknowledged the fact giving rise to the omission claim,"

14  but concluded nonetheless that Plaintiffs had "nudge[d] this claim past the plausibility line." *Id.* at 18.

15       In accordance with the Court's order, Plaintiffs filed the operative Second Amended Complaint

16  on September 24, 2018. *See* Dkt. Nos. 72, 82, 83.[4] Google answered on October 15. *See* Dkt. No. 89.

17       **D.**     **Fact and Expert Discovery**

18       Pursuant to the parties' agreement, party discovery began in earnest on August 15. Between

19  August 15 and the close of fact discovery (February 15, 2019), Plaintiffs propounded, and Google

20  responded to, four sets of interrogatories, two sets of requests for documents, and requests for

21  admission. Joint Decl., ¶ 17. In addition, Google propounded and Plaintiffs responded to three sets of

22  interrogatories, three sets of document requests, and requests for admission. *Id.* ¶ 21. Plaintiffs timely

23  responded to all of Google's written discovery requests and produced responsive documents. *Id.*

24  Google produced over 350,000 pages of documents pertaining to its failure analysis, technical

25

26  [4] The SAC asserts claims for: (i) breach of the implied covenant of good faith and fair dealing; (ii)
violation of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq*.; (iii) violation of the

27  Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq*.; and (iv) fraudulent concealment. *See*
Dkt. No. 83.

28

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 5:18-cv-00801-NC

1    specifications for the Pixel, product testing and development, communications about the Pixel and the

2    alleged Audio Defect, marketing materials, market research, sales figures, pricing data, warranty

3    claims, consumer complaints, and the relationship between Google and HTC (contract manufacturer of

4    the Pixel). *Id.* ¶ 18. Google's document productions and written discovery responses were the subject of

5    several disputes among the parties, which entailed frequent negotiations and resulted in two motions to

6    compel. *Id.* ¶¶ 19-20.

7         Plaintiffs took the depositions of ten Google witnesses with knowledge of its failure analysis

8    and of technical Pixel specifications, relevant sales and marketing information, and warranty

9    procedures. *Id.* ¶ 22. Those depositions included a second deposition of Google's Rule 30(b)(6)

10   designee. *Id*. Google deposed all four of the Plaintiffs in San Francisco. *Id.* Although Google also

11   sought to depose two former Plaintiffs, the Court upon Plaintiffs' motion entered a protective order

12   preventing those depositions. Dkt. No. 136.

13        Plaintiffs retained and worked closely with an electrical engineering expert, Dr. Shahin

14   Nazarian, to assess the technical underpinnings of the audio defect, and an economist, Stefan Boedeker,

15   to analyze class-wide damages. Joint Decl., ¶ 24. Both experts prepared written reports. *Id.* Google

16   deposed both of these experts. *Id.* Google retained three experts who submitted reports in opposition to

17   Plaintiffs' motion for class certification. *See* Dkt. No. 133. Each of those three experts prepared a

18   written report, and Plaintiffs were scheduled to depose them soon after the parties' February 22

19   settlement conference had the parties not reached a settlement. *Id.* ¶ 27.

20        Plaintiffs served document subpoenas on ten non-parties: Google's contract manufacturer for

21   the Pixel (HTC); the manufacturer of the audio codec chip inside the Pixel (Qualcomm); Pixel retailers,

22   distributors, or cellular carriers (Verizon, Best Buy, Reliance, Ingram Micro); Pixel repair vendors

23   (Cynergy, uBreakiFix, Puls); and the issuer of insurance policies for the Pixels (Assurant). Joint Decl.,

24   ¶ 25. In response to these subpoenas, Plaintiffs received over 100,000 pages of documents relating to

25   sales data, the Pixel's technical specifications, consumer complaints, repair records, and insurance

26   claims. *Id.* In addition, Plaintiffs deposed Verizon's corporate representative. *Id.*

27

28

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 5:18-cv-00801-NC

### E.    Plaintiffs' Motion for Class Certification

On November 5, 2018, Plaintiffs moved for certification of a class of all individuals in the United States who purchased from Google or an authorized reseller, other than for resale, a Pixel smartphone that was manufactured before January 5, 2017. Dkt. No. 94. Excluded from this proposed class were any individuals who received a full cash refund or a fixed Pixel as a replacement for an allegedly defective Pixel. *Id.*

Google opposed the class certification motion on January 23, 2019. Dkt. No. 133. Among other arguments, Google argued that individualized inquiries would be necessary to determine whether class members suffered actual injury; that the chance of the alleged Audio Defect ever manifesting in a Pixel was small; that Google either did not know of the alleged defect when Plaintiffs and class members bought their phones, or its knowledge was not exclusive; and that whether Google had a duty to disclose, and whether disclosure would have made a difference in individual purchasing decisions, varied among class members. *See id.* The parties reached an agreement in principle to settle this matter before the due date for Plaintiffs' reply brief. Joint Decl., ¶ 27.

### F.    The Settlement Negotiations

On June 19, 2018, pursuant to the parties' stipulation, the Court entered an Order referring the case to Magistrate Judge Donna M. Ryu for a settlement conference. Dkt. No. 53. On June 25, Judge Ryu scheduled a settlement conference for September 11. Dkt. No. 56. On August 31, Plaintiffs sent Google a settlement demand and a proposed term sheet setting forth all of the material terms associated with Plaintiffs' proposed resolution for this matter.

On September 4, the parties submitted confidential settlement briefs to Judge Ryu in advance of the settlement conference. After further negotiation between the parties and additional consultation with Judge Ryu, the parties agreed to continue the settlement conference to February 22, 2019. Dkt. Nos. 75, 79, 116, 117. At the February 22 mediation (Dkt. No. 117), over the course of eight hours, Judge Ryu succeeded in bridging the gap between the parties' positions, and they reached an agreement in principle to settle the case. Dkt. No. 141. Since then, the parties have engaged in further negotiations regarding the terms of the Settlement and executed the Settlement Agreement on May 10. *Id.* ¶ 37.

## IV.   SUMMARY OF SETTLEMENT TERMS

### A.   The Settlement Class

The Settlement Class consists of all individuals in the United States who purchased, other than for resale, a Pixel manufactured before January 4, 2017 and did not receive a replacement Pixel manufactured after January 3, 2017 or refurbished after June 5, 2017. Joint Decl., ¶ 38. Consistent with the Guidelines, the Settlement Class is co-extensive with the proposed litigation class. *See* Dkt. No. 94. Like the class proposed in Plaintiffs' certification motion, the Settlement Class includes all individuals in the United States who purchased a Pixel ███████████ and never received a replacement Pixel ███████████. Joint Decl., ¶ 42.

### B.   Settlement Consideration

Consistent with this District's preference for all-cash, non-reversionary settlements, the parties negotiated payment of a fixed sum of $7,250,000 in exchange for a release of all claims that were or could have been asserted in the case. Joint Decl., ¶ 40. Notice and administrative expenses will be deducted from the settlement amount, along with any attorneys' fees and expense reimbursements approved by the Court. *Id.* The balance will be applied to pay claims of class members. *Id.* Plaintiffs will seek up to 30% of the fund in attorneys' fees and up to $350,000 in reimbursement of expenses, as well as a $5,000 service award to each of the class representatives. *Id.* Notice and administration expenses are not expected to exceed $310,000. *Id.* If these deductions are allowed in full, the settlement will provide approximately $4,395,000 to pay class member claims. *Id.*

Plaintiffs believe that the $7,250,000 settlement is a favorable result in relation to their potential aggregate recoverable damages had they obtained class certification and prevailed at trial. The information available, as learned through discovery, shows that approximately ██████ Pixels were manufactured before January 4, 2017 and did not ██████████ surrounding the audio codec. *Id.* ¶ 41. Of these ██████ phones, Google's records indicate that approximately ██████ were returned to Google and Verizon for failures consistent with the alleged Audio Defect. Thus, Plaintiffs estimate the overall failure rate to be ██. *Id.*

Out of the ██████ Pixels that were returned to Google or Verizon, Google's records indicate that approximately ██████ were replaced with a Pixel that ███████████. Given that there have been no

1   confirmed Audio Defect failures in Pixels ███████ (*see* Dkt. 133-10, ¶ 17), the ████ people who

2   received a replacement ██████████ were made whole and have been excluded from the Settlement

3   Class. Accordingly, the Class consists of about █████ people, about █████ of whom reported

4   experiencing an alleged Audio Defect failure and arguably did not receive an adequate remedy. Joint

5   Decl., ¶ 42.

6       The available information further indicates that █████ is the approximate cost to properly repair

7   or refurbish a Pixel by replacing the motherboard or ██████████████ to the audio codec. *Id.* ¶ 43. While

8   Mr. Boedeker did not complete his conjoint analysis before the parties reached an agreement in

9   principle to settle this matter, his preliminary analysis suggests that the value consumers place on a

10  smartphone's working audio features generally corresponds to the █████ repair cost. *Id.* Thus, had the

11  case proceeded to trial, Plaintiffs could have argued that each of the █████ class members who

12  experienced a failure and did not receive a non-defective replacement phone suffered damages of

13  approximately █████, or aggregate damages of approximately ███████████████. *Id.* ¶ 44.

14  The remaining █████ class members also were damaged, Plaintiffs would argue, because they

15  purchased an allegedly defective Pixel and never received a fixed Pixel as a replacement. *Id.* The latter

16  group, however, did not report experiencing an Audio Defect failure, and the chance that they will ever

17  experience an Audio Defect failure is statistically insignificant. *Id.*[5] Their damages, therefore, generally

18  correspond to the █████ risk of a failure—a risk that was, and likely will continue to be, unrealized. *See*

19  *id.* Because the damages associated with failure are approximately █████, and Plaintiffs contend that the

20  group of █████ class members had a █████ risk of such a failure occurring, the expected value of their

21  damages is ████████████, or approximately ████████████ in aggregate damages. *Id.*

22      Given the foregoing, Plaintiffs could have argued at trial that every class member who

23  purchased an allegedly defective Pixel and did not receive a fixed replacement Pixel overpaid by at

24  least █████, and every class member who experienced an alleged failure overpaid by █████. *Id.* ¶ 45.

25  _____

[5] Google's Director of Operations attested that Google ████████████████████ through its
26  ████████████, which applies to audio failure claims made after expiration of the one-year
warranty. Declaration of Steven Nickel, Dkt. No. 133-11, ¶ 13. It can thus be estimated that the failure
27  rate for phones that have not failed within one year of ownership is approximately ██████████████
████████████ at issue.

28

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 5:18-cv-00801-NC

1  Plaintiffs accordingly estimate total damages for the Class of ██████████████████ 0

2  ████. *Id.* The settlement recovery of █████████ represents approximately ████ of these estimated

3  aggregate damages. *Id.* ¶ 46.

4       Plaintiffs' estimate assumes the Court would certify a class, Plaintiffs would prevail on every

5  claim, and the Court would award damages on an aggregate basis. *Id.* ¶ 47. If, assuming Plaintiffs

6  prevailed at trial, the Court required any form of individualized damage prove-up, with class members

7  having to come forward to establish whether or not they ultimately suffered any damage depending on

8  (1) whether they experienced the alleged issues in or out of warranty, and (2) whether Google's

9  warranty adjustments made the class member whole, Class Counsel believe a victory at trial would

10 likely be Pyrrhic. *Id.* ¶ 48. In contrast, the claims procedure under the Settlement offers substantial

11 recoveries to consumers who make the minimal effort needed to submit a claim. *Id.*

12      **C.      Distribution of Settlement Fund**

13      In developing the Plan of Allocation, Class Counsel used records produced in discovery to

14 ensure that class members with identified losses will readily receive payment based on an allocation

15 that tracks their individual experiences and records. *Id.* ¶ 49. Class members will be encouraged but not

16 required to file claims online using a dedicated website. *Id.*

17      In order to allocate the fund equitably, verify eligibility, obtain updated address information,

18 and allow class members to choose a payment preference, class members will be asked to complete and

19 return a simple claim form Class Counsel developed in consultation with the Settlement Administrator.

20 *Id.* ¶ 51. Through records possessed by Google and records produced by non-party Verizon, the parties

21 have email addresses for nearly all class members (though some of the email addresses may no longer

22 be valid). *Id.* ¶ 50. To the extent practicable, the Claim Form will be pre-populated with class member

23 names, email addresses, purchase information, whether the class member reported one or more failures,

24 and whether the class member paid an insurance deductible. *Id.* ¶¶ 50, 52. The Claim Form will require

25 each claimant to confirm his or her current contact information and desired payment option, and to

26 attest under oath that he or she purchased a new Pixel, not for resale, in the United States and that any

27 other information provided on the Claim Form is true and correct to the best of his or her knowledge.

28 *Id.* ¶ 52. If a class member experienced one or more alleged failures, but information about the alleged

9

failure is not pre-populated on his or her claim form, the class member can attest under oath to such alleged failure(s) and provide supporting documentation, such as emails, customer service chat logs, repair records, insurance claims, or Return Merchandise Authorizations. *Id.*

The Settlement Administrator will divide claimants into the following four groups:

**Group 1** includes claimants who purchased a Pixel and did not report experiencing the alleged Audio Defect, as well as claimants who do not submit sufficient Documentation to establish that their Pixel experienced the alleged Audio Defect. *Id.* ¶ 53.

**Group 2** includes claimants who paid a deductible to Assurant, the third-party insurer that provided device protection plans for the Pixel, on an insurance claim relating to the alleged Audio Defect. *Id.* The members of this group—and the respective amounts of their deductible payments—will be determined through records Assurant has furnished. *Id.* The Claim Form provided to such class members will be pre-populated to show that Assurant's records indicate they paid a deductible on an insurance claim relating to the alleged Audio Defect, and are eligible to be reimbursed for that payment under the Settlement. *Id.* To complete a claim, Group 2 claimants will only need to confirm the information and submit the form. *Id.* A Group 2 claimant may also be eligible for an additional payment as a member of another Claim Group. *Id.*

**Group 3** includes claimants who, according to Google's and Verizon's records, reported experiencing the alleged Audio Defect and then reported experiencing the alleged Audio Defect at least once on a replacement Pixel. *Id.* The Claim Form provided to such class members will be pre-populated to show that Google's and Verizon's records indicate they are eligible to receive a Settlement payment based on multiple alleged Pixel failures. *Id.* To complete a claim, Group 3 claimants who receive such a pre-populated Claim Form will only need to confirm the information and submit the form. *Id.* Additionally, Group 3 includes claimants who attest under oath that they experienced the alleged Audio Defect, who further attest that they received a replacement Pixel that experienced the alleged Audio Defect, and who submit Documentation sufficient to establish that they reported experiencing the alleged Audio Defect and then reported experiencing the alleged Audio Defect at least once on a replacement Pixel. *Id.*

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 5:18-cv-00801-NC

**Group 4** includes claimants who, according to Google's records, reported experiencing the alleged Audio Defect once. *Id.* The Claim Form provided to such class members will be pre-populated to show that Google's records indicate they are eligible to receive a Settlement payment based on an alleged Pixel failure. *Id.* To complete a claim, Group 4 claimants who receive such a pre-populated Claim Form will only need to confirm the information and submit the form. Additionally, Group 4 includes claimants who attest under oath that they experienced the alleged Audio Defect, and who submit Documentation sufficient to establish that they reported experiencing the alleged Audio Defect once. *Id.*

The parties propose to distribute the Net Settlement Fund as follows:

1.     An amount sufficient to pay each Group 1 claimant $20 will be set aside and reserved for such payments; provided, however, that if the sum of such payments would exceed 25% of the fund, 25% of the fund will be set aside and reserved for payments to the Group 1 claimants on a *pro rata* basis. *Id.* ¶ 54. Payment for each claim within Group 1 will be capped at $20. *Id.*

2.     An amount sufficient to fully reimburse the insurance deductibles paid to Assurant by the Group 2 claimants will be set aside and reserved for such reimbursements. *Id.*

3.     An amount sufficient to pay each Group 3 claimant $500 will be set aside and reserved for such payments. *Id.* Payment for each claim within Group 3 will be capped at $500. *Id.*

4.     The remaining money in the fund will be allocated as follows:

a.     An amount sufficient to pay each Group 4 claimant $350 will be set aside and reserved for such payments; provided, however, that if such payments would exceed the remaining money in the fund, the remaining money in the fund will be allocated to the Group 4 claimants on a *pro rata* basis. *Id.* Payment for each claim within Group 4 will be capped at $350. *Id.*

b.     If the fund is not then exhausted and the amount reserved for each Group 1 claimant is less than $20, the reserved payments for the Group 1 claimants will be increased *pro rata*, up to $20 for each such payment, so as to exhaust the fund. *Id.*

c.     If the fund is not then exhausted, the reserved payments for all claimants within Group 4 will be increased *pro rata* so as to exhaust the fund, subject to the Group 4 payment cap. *Id.*

        d.     If any additional funds remain in the Net Settlement Fund after payment of all eligible claims, Class Counsel will notify the Court and propose a reasonable alternative or alternatives for distribution of the remaining funds, subject to Google's approval.  *Id.*

In developing the Plan of Allocation and claims process, Class Counsel worked to make the settlement accessible and to ensure ease of administration, while also balancing the imperatives of targeting the greater relief to those individuals who experienced failures and deterring fraudulent or overstated claims. *Id.* ¶ 51. The multiple-failure claimants in Group 3 will receive a payment that is close to a full restitutionary measure of damages as these claimants were repeatedly unable to use the audio features on their Pixel and invested considerable time in attempting to obtain a remedy. *Id.* ¶ 56. Claimants in Group 4 will receive a payment of $350 to compensate them for ██████████████ ██████ ███ ██████████████████████████████████████ ███████████████████████████████████████████. *Id.* ¶ 59. Because claimants in Group 1 did not experience the alleged Audio Defect and likely will not experience it in the future, members of this group will receive payment commensurate with their expected-value damages of ████. *Id.* ¶ 58. While the precise amount recovered by claimants in Groups 1 and 4 will depend on the number of claims made, every class member who reported experiencing multiple failures is guaranteed $500 and every class member who made an insurance claim will receive a full refund of the paid deductible. *Id.* ¶¶ 56-57. Finally, even if the claims rate in Group 4 exceeds one-third (which is unlikely), the members of this single-failure group would still receive $350 each. *Id.* ¶ 59.

Plaintiffs expect that between 5% and 20% of class members will submit claims, and that the claims rate will be higher among class members who experienced a problem with their Pixel. *Id.* ¶ 70. These projected rates are consistent with Class Counsel's experience, which includes cases with claims rates ranging from less than 1% to 50%. *See Lockabey v. Am. Honda Motor Co.*, No. 37-100-00087755-CBU-BT-CTL (Cal. Super.); *Lynch v. Motorola Mobility LLC d/b/a Motorola*, No. 1:16-cv-04524 (N.D. Ill.); *In re Am. Express Fin. Advisors Litig.*, No. 04 Civ. 1773 (DAB) (S.D.N.Y.) Joint Decl., Ex. K (Northern District of California Guidance Chart). Claim submission rates are highly fact dependent and driven by factors such as the nature of the case, the severity of the problem, the cost of the underlying product or service, the methods for notice, and the accessibility of the claim form. *See*

1   *Date v. Sony Elecs., Inc.*, No. 07-15474, 2013 WL 3945981, at *9-10 (E.D. Mich. July 31, 2013)

2   ("[M]any factors affect response rates and this ratio should not be given great significance.") (citation

3   omitted); *Gascho v. Global Fitness Holdings, LLC*, No. 2:11-cv-436, 2014 WL 1350509, at *30 (S.D.

4   Ohio Apr. 4, 2014) ("[R]esponse rates in class actions generally range from one to 12 percent"). Class

5   Counsel have worked to simplify and streamline the claims process, recognizing the need both to limit

6   recovery to eligible claimants and to optimize recovery for those who experienced the most severe

7   problems.

8        **D.    Class Notice**

9        The Settlement Administrator will provide direct notice using class member lists furnished by

10  Google (for direct purchasers of Pixels) and by Class Counsel (for class members who purchased Pixels

11  through Verizon). Joint Decl., Ex. A (Settlement Agreement), § 4.1.3. Class members whose email

12  addresses are identified on the lists provided to the Settlement Administrator will receive notice via

13  email. *Id*. § 4.2. Within 14 days after sending email notice, the Settlement Administrator will send

14  postcard notices to (1) each class member for whom the email notice failed to send or "bounced back";

15  and (2) each class member for whom physical address information, but not email information, is

16  available. *Id*. § 4.3. In addition, the notice will be posted on the settlement website, and Class Counsel

17  will issue a press release providing notice of the settlement. *Id*. § 4.4. Supplemental online publication

18  notice, using digital advertisements through an advertising network to be agreed upon by the parties,

19  will be provided if the Settlement Administrator determines that less than 70% of the Class has been

20  notified through the individual notice efforts. *Id*. § 4.5.

21       **E.    CAFA Notice**

22       Defendant will direct the Settlement Administrator to provide notice to governmental

23  enforcement authorities, consistent with 28 U.S.C. § 1715. *Id*. § 4.6.

24       **F.    Release of Claims**

25       The proposed release applies to claims that were or could have been asserted in this action. *Id*. §

26  1.35. In accordance with the Guidelines, the release appropriately tracks the claims in the Second

27  Amended Complaint and the class proposed in Plaintiffs' motion for class certification. *See, e.g.*, *K.H.*

28  *v. Secretary of Dep't of Homeland Sec.*, No. 15-CV-02740-JST, 2018 WL 6606248, at *4 (N.D. Cal.

Dec. 17, 2018) ("Because the release is appropriately limited to claims related to those litigated in this lawsuit, the Court finds it is sufficiently narrow to support approval.").

### G. Attorneys' Fees and Expenses, and Service Awards for the Class Representatives

Class Counsel will apply for an award of attorneys' fees and reimbursement of litigation costs, together with service awards for the class representatives, at least 35 days before the due date for objections. *Id.* § 8.3. The fee application will be posted immediately on the settlement website. *Id.* Class Counsel expect to apply for a fee of up to 30% of the common fund. Joint Decl., ¶ 71. Class Counsel's total lodestar, as of May 1, 2019, is $2,975,081 million, representing 6,406.8 hours of work on this matter. *Id*. Thus if counsel were to submit their fee application now, the multiplier corresponding to an award of 30% of the fund would be approximately 0.73 (a negative multiplier). *Id*. Class Counsel also will seek reimbursement of case expenses in an amount not to exceed $350,000. *Id*.

Class Counsel further intend to apply for service awards of up to $5,000 for each of the class representatives. *Id*.; *see Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015) ("In this district, a $5,000 payment is presumptively reasonable."). Each Plaintiff devoted considered time to this case, including by assisting counsel in preparing the complaints, communicating with Class Counsel about case developments, responding to written discovery requests, gathering and producing documents, and traveling to provide deposition testimony. Joint Decl., ¶ 71.

### H. The Settlement Administrator

Class Counsel retained Kurtzman Carson Consultants, LLC ("KCC") as the settlement administrator after sending requests for proposal to five leading class action administrators. Joint Decl., ¶ 63. After reviewing all the proposals, Class Counsel selected KCC as the low bidder. *Id*. Administrative costs will be paid from the settlement fund. Class Counsel do not expect the costs of administration to exceed $310,000, or 4% of the settlement. *Id*. ¶ 69. In addition to managing the notice program and receiving and processing claims and opt-outs, KCC will maintain a dedicated settlement website containing links to the notice, claim form, and all other relevant settlement documents. *Id*. ¶ 67.

## V.   ARGUMENT

### A.   The 2018 Amendments to Rule 23(e)

The recent amendments to FED. R. CIV. P. 23 revised the approval process for class action settlements. "Under the new Rule 23(e), in weighing a grant of preliminary approval, district courts must determine whether 'giving notice is justified by the parties' showing that the court *will likely be able to*: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720 (MKB) (JO), 2019 WL 359981, at *12 (E.D.N.Y. Jan. 28, 2019) (emphasis in original). Hence the Court determines whether it "will likely be able to: (1) approve the settlement proposal under Rule 23(e)(2); and (2) certify the proposed class"—and, "[i]f these two elements are satisfied, the Court will consider whether the parties' proposed method of giving notice satisfies the requirements set out in Rule 23(c)(2)(B)." *Swinton v. SquareTrade, Inc.*, No. 4:18-CV-00144-SMR-SBJ, 2019 WL 617791, at *5 (S.D. Iowa Feb. 14, 2019). Class Counsel respectfully submit that all of the requirements for preliminary approval are met in this case.

### B.   The Settlement Is Fair, Reasonable, and Adequate

"[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" *In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 17-md-02777-EMC, 2019 WL 536661, at *5 (N.D. Cal. Feb. 11, 2019) (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)). For purposes of determining whether a proposed settlement should be approved, Rule 23(e)(2) directs the Court to consider whether "the class representatives and class counsel have adequately represented the class"; "the proposal was negotiated at arm's length"; "the relief provided for the class is adequate"; and "the proposal treats class members equitably relative to each other." The Advisory Committee Notes make clear that these factors do not displace the "lists of factors" courts have traditionally applied to assess proposed class settlements. Instead, the enumerated factors under Rule 23(e)(2) "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." FED. R. CIV. P. 23(e)(2) advisory committee's note (2018). Courts accordingly consider the Rule 23(e)(2) factors alongside traditional factors. *See, e.g.*, *Swinton*, 2019 WL 617791, at *5.

15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

At preliminary approval in the Ninth Circuit, courts normally ask whether "[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval . . . ." *Burden v. SelectQuote Ins. Servs.,* No.: C 10-05966-SBA, 2013 WL 1190634, at *3 (N.D. Cal. Mar. 21, 2013) (citations omitted). Application of both the Rule 23(e)(2) and traditional factors demonstrates that the settlement here is fair, reasonable, and adequate and in the best interests of the Class.

### 1.    The Proposed Settlement Is the Product of Arm's Length Negotiations Among Experienced Counsel.

Under Rule 23(e)(2), the Court considers whether the class representatives and class counsel adequately represented the class and whether the settlement proposal was negotiated at arm's length. "An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Mendez v. C-Two Grp., Inc.*, No. 13-CV-05914-HSG, 2017 WL 1133371, at *4 (N.D. Cal. Mar. 27, 2017) (citation omitted). This presumption should apply here given that experienced counsel on both sides endorse the settlement and it followed an all-day conference with a respected neutral officer, Judge Ryu. *See* FED. R. CIV. P. 23(e)(2) advisory committee's note to 2018 amendment (advising that "the involvement of a neutral . . . mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests."); *Nat'l Rural Telecoms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who are most closely acquainted with the facts") (citation omitted); *Federal Ins. Co. v. Caldera Med., Inc.*, No. 2:15-cv-00393-SVW-PJW, 2016 WL 5921245, at *5 (C.D. Cal. Jan. 25, 2016) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive") (citation omitted).

To negotiate a fair and reasonable settlement, "the parties [must] have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). The parties in this case reached their settlement after Plaintiffs had gained a thorough understanding of the strengths and weaknesses of their claims through numerous depositions of Google and Verizon fact witnesses and comprehensive document and written discovery. Plaintiffs obtained and

reviewed over 500,000 pages of documents from Google and non-parties showing failure analyses, technical specifications, pricing and sales data, marketing materials, customer complaints, communications about the alleged defect, and agreements between Google and non-party manufacturers and resellers. Plaintiffs also propounded and received responses to four sets of interrogatories and negotiated or moved to compel supplemental responses of Google's interrogatory responses as needed. The materials obtained through discovery concerned the essential factual questions in this case: the scope of the alleged audio failures, technical details relating to the source of the alleged Audio Defect and the cost to repair it, the extent and timing of Google's knowledge of the alleged defect, the means by which Google could have disclosed it to class members, and Google's procedures for responding to Pixel customer complaints and warranty claims. *See, e.g.*, *LaGarde v. Support.com, Inc.*, No. 12-0609 (JSC), 2012 WL 13034899, at *7 (N.D. Cal. Nov. 2, 2012) (existence of robust discovery indicates plaintiffs were sufficiently informed during settlement negotiations).

Further weighing in favor of the settlement, the parties reached their agreement only after Plaintiffs retained experts (1) to develop a class-wide damages model by developing a conjoint survey, and (2) to investigate the alleged defect by reviewing failure analysis documents and examining and testing the internal components of several Pixels. *See Kacsuta v. Lenovo (U.S.) Inc.*, No. SACV 13-00316 CJC (RNBx), 2014 WL 12585783, at *5 (C.D. Cal. Sept. 15, 2014) (that class counsel hired engineering experts to test and analyze the computers at issue weighed in favor of the settlement). Class Counsel's discovery and expert work enabled them to "enter[] the settlement discussions with a substantial understanding of the factual and legal issues from which they could advocate for their respective positions and which are necessary for a robust negotiation." *Kulesa v. PC Cleaner, Inc.*, No. CV 12-0725 FMO (ANX), 2014 WL 12581769, at *10 (C.D. Cal. Feb. 10, 2014); *see also Van Lith v. iHeartMedia + Entm't, Inc.*, No. 1:16-CV-00066-SKO, 2017 WL 1064662, at *16 (E.D. Cal. Mar. 20, 2017) ("The adversarial nature of these negotiations and the discovery performed by the parties indicate that the settlement process is procedurally adequate."). Thus, the first factor is satisfied here.

## 2.    The Settlement Treats All Class Members Equitably.

"Approval of a plan of allocation of settlement proceeds in a class action . . . is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair,

17

reasonable and adequate." *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944 JST, 2016 WL 6778406, at *3 (N.D. Cal. Nov. 16, 2016) (quoting *In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 WL 502054, at *1-2 (N.D. Cal. June 16, 1994)). The Plan of Allocation meets this standard because it treats all class members fairly in relation to the strength of their claims. Each class member is invited to submit a Claim Form, and the Plan of Allocation establishes a uniform, objective method for distributing awards that accounts for structural differences among claims based on their value and evidentiary support.

For purposes of setting recovery amounts, the Plan of Allocation makes common sense distinctions in regard to: (1) class members who experienced the alleged Audio Defect and those who did not; (2) class members who received a replacement Pixel after experiencing the alleged Audio Defect and then reported experiencing the alleged Audio Defect again, on the replacement Pixel; (3) and class members who paid insurance deductibles to obtain a replacement and those who did not. Joint Decl., ¶¶ 53-54. The plan fairly protects the interests of all parties by directing relief to the most injured class members—awarding more to those who reported audio failures to Google or Verizon—while also providing lesser settlement benefits to class members who submit claims without documentation. *Id.*; *see* Order Granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, *In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC (N.D. Cal. Mar. 28, 2019), ECF No. 526 at 4-5 (approving settlement paying lower dollar amount based on the comparative weakness of certain claims).[6] The Plan of Allocation will deter fraudulent claims and accounts for the reality that experiences across the class varied in severity. The plan ensures the class members will be treated equitably relative to each other, and should therefore be approved as fair, reasonable, and adequate.

---

[6] *See also Free Range Content, Inc. v. Google, LLC*, No. 14-cv-02329-BLF, 2019 U.S. Dist. LEXIS 47380, at *7-8 (N.D. Cal. Mar. 21, 2019) (approving settlement which paid as low as $10 per class member); Order Granting Motion for Final Approval of Class Action Settlement, *In re: Sony VAIO Computer Notebook Trackpad Litigation*, No. 3:09-cv-02109 (S.D. Cal. Aug. 7, 2017), ECF No. 378 at 4 (approving settlement paying $5 to class members whose laptops did not manifest the defect); *see also* Order Granting Preliminary Approval of Class Action Settlement, *Fitzhenry-Russell v. Keurig Dr. Pepper, Inc.*, No. 5:17-cv-00564 (N.D. Cal. Jan. 10, 2019), ECF No. 335 at 3 (approving settlement which paid class members $2 to $5.20 without proof of purchase or $40 with proof of purchase).

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 5:18-cv-00801-NC

### 3.      The Relief Under the Proposed Settlement Is Adequate.

In determining whether the class-wide relief is adequate under Rule 23(e)(2), the Court considers "the costs, risks, and delay of trial and appeal"; "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims"; "the terms of any proposed award of attorney's fees, including timing of payment"; and "any agreement required to be identified under Rule 23(e)(3)."[7] As Judge Freeman has recognized, "[a]pproval of a class settlement is appropriate when 'there are significant barriers plaintiffs must overcome in making their case.'" *Mendoza v. Hyundai Motor Co., Ltd.*, No. 15-CV-01685-BLF, 2017 WL 342059, at *6 (N.D. Cal. Jan. 23, 2017) (citation omitted). Likewise, it is "well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, No. C-07-5944 JST, 2016 WL 3648478, at *6 (N.D. Cal. July 7, 2016) (internal quotation marks and citation omitted).

For the reasons set forth above, Plaintiffs believe that if they prevailed at trial and in a post-trial appeal, the class would obtain a judgment in the range of ███████. The $7.25 million in settlement consideration represents approximately ███ of the total estimated measure of damage and a substantial percentage of any projected trial verdict. If the Court were to require any form of individualized prove-up following a favorable liability verdict, the total recovery would be greatly reduced. Especially given Google's liability defenses and class certification challenges, the settlement delivers a substantial recovery for the class. *See Linney*, 151 F.3d at 1242 (settlement amounting to a fraction of the potential total recovery was reasonable given the significant risks of going to trial); *Hendricks v. StarKist Co.*, No. 13-CV-00729-HSG, 2015 WL 4498083, at *7 (N.D. Cal. July 23, 2015) (settlement representing "only a single-digit percentage of the maximum potential exposure" was reasonable given the defenses and potential weaknesses in the plaintiffs' case). Other cases alleging similar claims have resulted in lower payments to customers than those contemplated here. *See, e.g.*, *Horvath v. LG Electronics MobileComm U.S.A., Inc.*, No. 3:11-cv-01576-H-RBB, ECF No. 101 (S.D.

---

[7] There are no undisclosed side agreements to disclose under Rule 23(e)(3).

1   Cal. Jan. 14, 2014) (approving settlement of $19 per claimant in class action alleging smartphones had

2   a defect causing them to "randomly freeze, crash, reset or power-off completely").

3         While Plaintiffs are confident in the strength of their case, Google has vigorously denied

4   liability from the outset. *See, e.g.*, *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 326 (C.D. Cal. 2016)

5   ("The settlement the parties have reached is even more compelling given the substantial litigation risks

6   in this case."). Google's opposition to Plaintiffs' motion for class certification argued that no class

7   could be certified where the alleged defect would not necessarily manifest and, in fact, most Pixel

8   purchasers never had any audio problems. Dkt. No. 133 at 7 (citing *Butler v. Porsche Cars N. Am.*,

9   2017 WL 1398316, at *6 (N.D. Cal. Apr. 19, 3017)). Google further argued that the question of

10   exclusive knowledge could not be determined on a class-wide basis where Google's knowledge of the

11   problem evolved over time—an argument that posed a risk, at a minimum, of significantly curtailing

12   the damages period. Dkt. No. 133 at 10 (citing *In re Seagate Tech. LLC*, 326 F.R.D. 223, 245 (N.D.

13   Cal. 2018); *In re MyFord Touch Consumer Litig.*, No. 13-CV-03072-EMC, 2016 WL 6873453, at *4

14   (N.D. Cal. Nov. 22, 2016)). Moreover, Google disputed the severity of the alleged defect and contested

15   Plaintiffs' complex theory of damages, which Plaintiffs would have had to explain to a lay jury. Dkt.

16   No. 133 at 14-15, 20-22. Google also asserted several challenges to the merits of Plaintiffs' claims,

17   including whether Google's knowledge of the alleged defect triggered a duty to disclose, which the

18   Court recognized as an important and complex question. *See* MTD Order, Dkt. No. 66 at 18. Thus

19   Plaintiffs faced major risks associated with class certification, summary judgment, and trial. *See, e.g.,*

20   *Anderson v. Samsung Telecommc'ns Am., LLC*, No. SACV 13-01028-CJC (JPRx), 2014 WL

21   11430910, at *1 (C.D. Cal. Oct. 20, 2014) (denying class certification in a case alleging that a

22   smartphone "repeatedly experienced unintended, uninitiated power loss, often accompanied by

23   freezing"); *Haag v. Hyundai Motor Am.*, No. 12-CV-6521L, 2019 WL 1029002, at *4 (W.D.N.Y. Mar.

24   5, 2019) (finding common issues did not predominate in a putative product defect class action, as "there

25   is no basis for the Court to infer that a reasonable consumer—let alone an entire class of consumers—

26   would have demanded a lower purchase or lease price if they were informed that they might have to

27   perform [auto part] replacement and maintenance . . . earlier than they otherwise expected.").

28

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 5:18-cv-00801-NC

To prevail, Plaintiffs would have had to obtain class certification, defend a certification order on appeal under Rule 23(f), survive motions for decertification and for summary judgment, and prevail at trial and in a likely post-trial appeal. In contrast to the uncertainty and delays attendant to continued litigation, the settlement before the Court provides certain relief to the consumers who make up this class. *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("difficulties in proving the case" favored settlement approval); *Kacsuta*, 2014 WL 12585783 (risks arising from the defendant's vigorous defense, where, as here, a motion to dismiss had been granted in part, weighed in favor of settlement).

The parties' settlement delivers "a significant, easy-to-obtain benefit to class members" in the form of a cash payment to any Pixel purchaser with a valid claim. *In re Haier Freezer Consumer Litig.*, No. 5:11-CV-02911-EJD, 2013 WL 2237890, at *4 (N.D. Cal. May 21, 2013); *see also Ebarle v. Lifelock, Inc.*, No. 15-CV-00258-HSG, 2016 WL 234364, at *8 (N.D. Cal. Jan. 20, 2016) (settlement that provides immediate benefits to class members has value compared to the risk and uncertainty of continued litigation). As such, the settlement falls within the range of reasonableness and should be preliminarily approved.

### C.    The Court Will Be Able to Certify the Class for Purposes of Settlement.

When a class has not been certified before settlement, the Court considers whether "it likely will be able, after the final hearing, to certify the class." FED. R. CIV. P. 23(e)(1) advisory committee's note (2018). The Court here will likely be able to certify the proposed settlement class at final approval.

#### 1.    The Class Members Are Too Numerous to Be Joined.

For certification of a class to be appropriate, its members must be so numerous that their joinder would be "impracticable." FED. R. CIV. P. 23(a)(1). It is undisputed that the Class includes purchasers of approximately ▮▮▮ Pixels. Numerosity is satisfied.

#### 2.    There Are Common Questions of Law and Fact.

Rule 23 requires common questions of law or fact. FED. R. CIV. P. 23(a)(2). Commonality is construed 'permissively' and is satisfied when class members share 'some . . . legal issues or a common core of facts.'" *J.L. v. Cissna*, No. 18-cv-04914-NC, 2019 WL 415579, at *9 (N.D. Cal. Feb. 1, 2019) (quoting *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010)). The common questions in this case

21

include whether the Pixel is defective, whether Google had knowledge of the alleged defect (and if so, when), and whether Google had a duty to disclose the alleged defect. These questions are capable of class-wide resolution and would "resolve an issue that is central to the validity of each one of the claims in one stroke." *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*, 2019 WL 536661, at *5 (citation omitted). Thus, commonality is satisfied.

### 3.      Plaintiffs' Claims Are Typical of the Class.

"Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). "The test of typicality" under Rule 23(a)(3) is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (citation omitted).

In this case, Plaintiffs and class members have the same types of claims stemming from the same alleged violations concerning the same product. Typicality, therefore, is satisfied. *See Gold v. Lumber Liquidators, Inc*., 323 F.R.D. 280, 288 (N.D. Cal. 2017) (typicality met where the plaintiffs' and class members' claims were based on the same allegedly defective product and deceptive conduct).

### 4.      Plaintiffs and Class Counsel Will Fairly and Adequately Protect the Interests of the Class.

Two questions are relevant to adequacy of representation under Rule 23(a)(4): "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). Plaintiffs and their counsel do not have any conflicts with class members and have vigorously prosecuted this case, supporting certification.

#### a.      Plaintiffs Have No Conflicts of Interest and Have Diligently Pursued the Action on Behalf of the Other Class Members.

Plaintiffs agreed to serve in a representative capacity, communicated with their attorneys, produced documents, and helped prepare their complaint allegations and discovery responses. They prepared for, traveled to, and gave depositions. They will continue to act in the best interests of the other class members; there are no conflicts between Plaintiffs and the class. Fed. R. Civ. P. 23(a)(4);

22

*see Mergens v. Sloan Valve Co.*, No. CV16-05255 SJO (SKx), 2017 WL 9486153, at \*6 (C.D. Cal. Sept. 18, 2017) (adequacy requirement met where plaintiff had no interests antagonistic to the class).

### b.     Interim Class Counsel Are Well Qualified.

Interim Class Counsel are qualified to serve as Class Counsel. Collectively, they have decades of experience successfully representing plaintiffs and classes in complex class action litigation, including in consumer product defect cases. *See* Dkt. No. 46; Order Granting Motions for Class Certification and Denying *Daubert* Motions, *In re Lidoderm Antitrust Litig.*, No. 3:14-md-02521-WHO (N.D. Cal. Feb. 21, 2017), ECF No. 670 at 29 n.24 ("These firms have ably and vigorously litigated this case, and nothing has occurred to undermine my initial determination of their experience and adequacy."). The adequacy of representation requirement is accordingly met in this case.

### 5.     The Requirements of Rule 23(b)(3) Are Met.

As to the familiar predominance and superiority requirements, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there will be no trial." *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997) (explaining that Rule 23(b)(3)(D) drops out of the analysis). As set forth below, the predominance and superiority requirements are met here.

### a.     Common Issues of Law and Fact Predominate for Settlement Purposes.

The predominance inquiry tests the cohesion of the class, "ask[ing] whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted). Predominance is ordinarily satisfied, for settlement purposes, when the claims arise out of the defendant's common conduct. *See, e.g.*, *Gold*, 323 F.R.D. at 288 (predominance satisfied where claims were based on "the same deceptive conduct"); *Kacsuta*, 2014 WL 12585783, at \*3 (common issues "significantly outweigh any individual questions" where the claims arise out of the "same alleged course of conduct" by the defendant).

This settlement class is cohesive: All class members purchased Pixels that allegedly contain a common audio defect that Google is alleged to have fraudulently concealed. California law applies to the claims of all class members under Google's Terms of Service, to which all Pixel users assented

23

when activating their phones, because that contract selects California law for any dispute "arising out of or relating to" the Pixel. *See* Motion for Class Cert., Dkt. No. 94 at 2, 16-18 & Ex. 19. In opposing class certification for trial purposes, Google did not dispute the class-wide application of California law. Dkt. No. 133. Thus, there is no choice-of-law concern and common legal issues predominate.

Further, common questions of fact abound with respect to Plaintiffs' unfair trade practice and consumer protection counts: whether the phones are defective; whether and when Google should have disclosed the existence of the alleged defect; whether the allegedly concealed information was material to a reasonable consumer; and whether class members sustained harm as a result of Google's conduct. *See, e.g.*, *Kacsuta*, 2014 WL 12585783, at *3 (predominating common issue was "the knowing sale of defective Class Computers").[8] By contrast, the individual questions mostly relate to damages and are less important; damages calculations "alone cannot defeat class certification." *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 987-88 (9th Cir. 2015).

For these reasons, common questions predominate for settlement purposes.

**b.   A Class Action Is a Superior Means of Resolving This Controversy.**

The superiority inquiry "requires the court to determine whether maintenance of this litigation as a class action is efficient and whether it is fair." *One Unnamed Deputy Dist. Attorney v. Cty. of Los Angeles*, No. CV 09-7931 ODW (SSX), 2011 WL 13128375, at *4 (C.D. Cal. Jan. 24, 2011); *see Wolin v. Jaguar Land Rover North Am., LLC*, 617 F.3d 1168, 1175-76 (9th Cir. 2010). Here, given the relatively low amount of the individual claims, class members are unlikely to bring individual lawsuits against Google. And because the class members number in the hundreds of thousands, class-wide resolution of their claims in a single action is efficient. *See Mullins v. Premier Nutrition Corp.*, No. 13-CV-01271-RS, 2016 WL 1535057, at *8 (N.D. Cal. Apr. 15, 2016) ("Cases, such as this, 'where

---

[8] *See also, e.g.*, *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796, 802 (7th Cir. 2013) ("There is a single, central, common issue of liability: whether the [product] was defective."); *Asghari v. Volkswagen Grp. of Am., Inc.*, No. CV13-02529 MMM (VBKx), 2015 WL 12732462, at *15 (C.D. Cal. May 29, 2015) (similar questions concerning a defect and the defendant's knowledge predominated); *Warner v. Toyota Motor Sales, U.S.A., Inc.*, No. CV15-2171 FMO (FFMx), 2016 WL 8578913, at *7 (C.D. Cal. Dec. 2, 2016) (such questions "would drive the resolution of t[h]e litigation").

litigation costs dwarf potential recovery' are paradigmatic examples of those well-suited for classwide prosecution.") (citing *Hanlon*, 150 F.3d at 1023).

Therefore, consistent with Rule 23(e)(1)(B), the Court will likely be able to certify the settlement class in this case.

**D.    The Proposed Class Notice and Plan for Dissemination Are Reasonable and Should Be Approved.**

Rule 23(e)(1)(B) requires the Court to "direct notice in a reasonable manner to all class members who would be bound by the proposal." Under Rule 23(b)(3), the Court must "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B).

The notices here fully comply with Rule 23 and the due process mandates. Using plain language, these proposed notices provide all information required under Rule 23(c)(2)(B). Joint Decl., Exs. G–I. In crafting these notices Plaintiffs followed the notice language suggested in the Guidelines. The proposed notice program provides for direct email notice as well as follow-up mechanisms for directly notifying class members of the settlement. The settlement website will also be a useful resource for class members—it will post the Claim Form, the long-form notice, and key pleadings in the case, including the attorneys' fee application once it is filed. The Settlement Administrator will establish as well a toll-free number for class members to call with questions. This plan provides the best notice practicable under the circumstances. *See, e.g.*, *Wahl v. Yahoo! Inc.*, No. 17-cv-02745-BLF, 2018 WL 6002323, at *3 (N.D. Cal. Nov. 15, 2018) (concluding that a notice plan calling for direct email notice, followed by mailed notice to individuals to whom emails "bounced," constituted "the best notice practicable under the circumstances"); *Walsh v. CorePower Yoga LLC*, No. 16-CV-05610-MEJ, 2017 WL 589199, at *12 (N.D. Cal. Feb. 14, 2017) (approved notice plan provided for a combination of mail and email using the most recent contact information available).

**VI.    CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court (1) grant preliminary approval of the proposed settlement, (2) direct notice to the settlement class, and (3) set a schedule for settlement proceedings, including the final fairness hearing.

Dated: May 10, 2019                    Respectfully submitted,

                                       **GIRARD SHARP LLP**

                                       */s/ Simon S. Grille*
                                       Daniel C. Girard (SBN 114826)
                                       Jordan Elias (SBN 228731)
                                       Adam E. Polk (SBN 273000)
                                       Simon S. Grille (SBN 294914)
                                       601 California Street, Suite 1400
                                       San Francisco, CA 94108
                                       Telephone: (415) 981-4800
                                       *dgirard@girardsharp.com*
                                       *jelias@girardsharp.com*
                                       *apolk@girardsharp.com*
                                       *sgrille@girardsharp.com*

                                       Benjamin F. Johns (*pro hac vice*)
                                       Andrew W. Ferich (*pro hac vice*)
                                       Zachary P. Beatty (*pro hac vice*)
                                       Beena M. McDonald (*pro hac vice*)
                                       **CHIMICLES SCHWARTZ KRINER
                                        & DONALDSON-SMITH LLP**
                                       One Haverford Centre
                                       361 West Lancaster Avenue
                                       Haverford, PA 19041
                                       Telephone: (610) 642-8500
                                       Fax: (610) 649-3633
                                       *bfj@chimicles.com*
                                       *awf@chimicles.com*
                                       *zpb@chimicles.com*
                                       *bmm@chimicles.com*

                                       *Interim Co-Lead Counsel for Plaintiffs*

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 5:18-cv-00801-NC

1

**CERTIFICATE OF SERVICE**

2       I hereby certify that on May 10, 2019, I electronically filed the foregoing document using the

3  CM/ECF system, which will send notification of such filing to all counsel of record registered in the

4  CM/ECF system. I also caused copies of the under seal documents to be served *via electronic mail* on

5  counsel of record for Defendant and counsel for non-parties Assurant and uBreakiFix, where

6  appropriate.

7                                                     */s/ Simon S. Grille*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 5:18-cv-00801-NC